Solomon *vs.* Solomon, Ex'x.

No. 2.— HENRY SOLOMON, plaintiff in error *vs.* FRANCES SOLOMON, Ex'x of JAMES SOLOMON, deceased, defendant in error.

[1.] Where two or more persons enter into an agreement to purchase cotton jointly, to advance equal portions of the purchase money, to pay equal portions of the expense of the transportation of the same, and to share in the loss and profits, it is in judgment of law a co-partnership for a single adventure.

[2.] Partners, as between *themselves*, may alter, modify or partially dissolve the co-partnership contract; provided they do not violate any principle of law or public policy.

[3.] When one partner fraudulently misapplies any portion of the partnership funds to his own private use, without the knowledge or consent of the other partners, he will be held liable for the same, with interest thereon from the time of such misapplication, to the other partners.

[4.] Where, however, one partner drew $3,500 of the joint funds of the partnership, with the *express assent* of his co-partner, it was *held*, that he was not liable for interest thereon, until a demand was made upon him to account therefor by his co-partner and refused, he being considered in *default* only from the time of such refusal.

[5.] When one, through a mistake of the law, acknowledges himself under an obligation which the law will not impose upon him, he shall not be bound thereby.

In Equity from Twiggs Superior Court. Tried before Judge SCARBOROUGH, at October Term, 1846.

For the facts of the case, see the opinion of the Supreme Court.

JOHNSON, HARRIS, ROCKWELL and COLE, for the plaintiff in error.

Argument of Mr. ROCKWELL.

Partnership is defined to be a voluntary contract between two or more competent persons, to place their money, labour, effects and skill, or some or all of them, in lawful commerce in business, with the understanding that there shall be a communion of profits between them. *Story on Part.* 2. *Gow on Part.* 1. *Montague* 1. *Collyer on Part.* 2.

The view of dividing *the benefit* resulting from the partnership, is the main object of the agreement. As between themselves and apart from the operation of law, where the rights of third persons do not intervene, this division of benefit may be the sole end of their stipulations. The partnership contract is founded purely upon the consent of the partners, and whatever they agree in good faith to perform, contravening no principle of law, is binding upon all. Hence, although a community of interest is the essence of all

partnerships, it is by no means necessary that there should be a community of loss.  Among the Romans it was held, that one partner might by agreement be entitled to a share in the profits without being accountable for any part of the loss.  *Inst. lib.* 3, *tit.* 26, *sec.* 2.  *Watson on Part.* 56.  And although this proposition, with a slight modification, has been adopted in the Common Law, to wit : that each partner shall share in the losses so far as they constitute a charge upon, or a deduction from the profits, *Collyer on Part.* 3 *Mees. & Wels.* 359.  *Story on Part.* 28, yet cases are by no means novel, where a partner has been by agreement permitted to share the gross profits of the common business.

It is competent for the partners to agree that the profits shall be equally divided between them, and if there be no profits the loss shall be borne by one or more, and that the other shall be ' *inter sese*' exempt, 5 *B. & A.* 954.  3 *Mees. & Wels.* 357.  *Story on Part.* 28.  So the proportion in which they are to share the profits or losses, may be varied at their pleasure, whether they contribute equally to the common stock or not.

The law has left these matters to the discretion of the parties, taking care that no fraud, imposition, or undue advantage is practised by either side.  Agreements between partners as to the limitation of the partnership, the manner in which the business is to be conducted, the capital to be employed, the proportion in which profits are to be divided and losses borne, time and mode of settling accounts between them, the powers and duties of each partner, and various other matters connected with the transaction of the partnership business, are entirely the subject of personal and private stipulation and arrangement, and in whatever way they may be ultimately settled between themselves, unless they interfere with or contravene some principle or rule of law, they cannot be impeached.  *Gow on Part.* 9.

The contract of partnership may be verbal or in writing.  *Sto.* 119.  And as no particular solemnity is necessary to call it into being, none is necessary to qualify, alter, supersede, or dissolve it. The terms of this contract may be changed at pleasure by mutual consent, and it has been held, that a course of dealing long enough to demonstrate that the partners have agreed to change the original articles of partnership, shall be held conclusive of such change. *Turn. & Russ.* 523.

Particular transactions may be abstracted from the general partnership account, so as to avoid the operation of the general rule of

law, that actions at law cannot be maintained by one partner against another, and give rise to such actions. The books abound in such examples 3 *Mass. R.* 364. 10 *Moore,* 341. 3 *Bing.* 54. 7 *B & C.* 419. 1 *Mann. & Ry.* 238. *Collyer* 143 *et seq.* Such actions may be maintained without an express promise. *Holt N. P. C.* 368. In the several States, however, the rule upon this subject is conflicting. It has been usually held, that an action at law would lie to recover a final balance without an express promise to pay it. 1 *Binney R.* 191. 1 *Wash. C. C. R.* 435. In Massachusetts, a final settlement is not necessary. 9 *Mass. R.* 539. *Ib.* 540. 12 *Mass. R.* 34. 14 *ib.* 116. 3 *Pick.* 420. 6 *Pick.* 179. It has been held, that parties may separate any portion of the partnership affairs from the rest, and adjust that portion. 6 *N. H. R.* 547. 1 *Wend. R.* 532. 4 *Tyrwh. R.* 335. These authorities conclusively prove, that not only a variation of the articles of partnership may be made by the consent of the partners, and such variations '*inter se*' be upheld by the Court, but that the operation of the rules of law will be varied by the changing phases of the partnership business.

I. With these principles in view, it is proposed to consider the questions presented by this record, to wit, as to the charge of the Court below "that if a partner draws upon the partnership funds and applies the proceeds to his own use, he is liable to account to his co-partner for a moiety with interest from the time he received the funds." Were this true as a general principle, the settlement of partnership accounts would be an unfailing source of constant and perplexing litigation. The opinion is suggested by counsel, with deference, that the allowance of interest as against a partner, constitutes the exception to the general rule, and it is allowed, when at all, as a punishment for some default. In the case of Dexter *vs.* Arnold, 3 *Mason,* 289, it was held, that interest is not allowed on partnership accounts generally, until after a balance is struck on a settlement between the partners, unless the parties have otherwise agreed or acted in their partnership concerns. In the case of Miller *vs.* Lord, 11 *Pick. R.* 11. The Court says, " in general when the articles of partnership permit the partners to withdraw certain sums annually without containing any stipulations in regard to interest thereon, interest will not be allowed." It would thus seem that a stipulation is necessary to carry interest on the account, when the sums are drawn in good faith and by consent. Here the item constituting the subject matter of the suit, was a

Solomon *vs.* Solomon, Ex'x.

sum of $3,500, drawn by one partner with the consent of the other, there being no articles of partnership, and no stipulation either at the formation of the partnership, or the time of drawing the amount, that it should bear interest.    The only cases where interest has been allowed on partnership accounts against a partner, before a balance struck, will be found to be where the money has been withdrawn *mala fide*, or retained improperly.    Such, for example, are the cases of Simpson *vs.* Feltz, 1 *McCord Ch. R.* 220, and Stoughton *vs.* Lynch, 2 *John. Ch. R.* 209.    The general Common Law rule is, that the law does not imply a contract on the part of the debtor to pay interest on a sum he owes, although the debt may be of a fixed amount, and have been frequently demanded. 1 *Campb. R.* 50; 2 *ib.* 426; 1 *Bos. & Pul. R.* 307; 9 *Barn. & Cresw. R.* 378; 4 *Man. & Ry. R.* 305; 5 *Cowen R.* 587.    It is not due in the absence of express stipulation, even in the case of written instruments, unless they be commercial instruments of a negotiable nature.    9 *Barn. & Cresw. R.* 378; 6 *Bingh. R.* 709; 4 *Moo. & Pay.* 589, *S. C.*    The charge of the Court on this point is therefore deemed erroneous.

II. It is not denied that *quoad* third persons a participation in the profits of a business, and a community of interest in the capital stock, creates in law, ordinarily, a partnership between the parties. But in the case at bar the question is, how the acts of the parties in relation to this sum of $3,500 drawn by Henry Solomon from the partnership fund for his own use, with the assent of James Solomon, are to be construed as between themselves.    The refusal of James Solomon to receive the same amount for himself, and his declarations, clearly prove that he preferred to receive the sterling exchange thereon, and incontestably show a severance of that amount from the partnership fund on the part of James Solomon ; for on this amount the profit was to be his exclusive profit.    Here it is material to observe, that the legal term "communion of profit" imports a joint and mutual interest in the profit.    It cannot, surely, be said that as to the sum of $3,500, which James Solomon preferred to leave in the hands of the factor, and on which he desired to realise to himself the sterling exchange, there was a joint and mutual interest in the profits existing between the two partners. The intentions of the parties as expressed by their acts and ascertained by the testimony, and which constitute the true guide for the Court in determining this question, absolutely forbid such a conclusion.    Mr. Justice Huntingdon, in delivering the opinion of

the Court in Loomis *vs.* Marshal, 12 *Conn. R.* 69. — (which was a question of partnership *quoad* third persons) says, " that the parties to this agreement did not intend to create a partnership, as between themselves, is very obvious from the facts set forth in this motion, connected with the stipulations contained in the agreement; and if they are liable as partners, they are made so by construction of law. If they are all jointly liable, their liability arises from the fact, that they have entered into a contract, which as between themselves and the plaintiff, controls their clear intention, if not express stipulation, to the contrary. Whether these defendants have entered into such terms, is to be determined by a fair construction of the agreement which they have executed." The defendants were held not to be partners. If then, as to third persons, the intentions of the parties may be looked to to decide a question of partnership, *a fortiori* the same rule may be considered in deciding the same question ' *inter sese.*' Kent, C. J. in Post *vs.* Kimberly, 9 *Johns. R.* 504, observes, " we must be careful not to carry the doctrine of constructive partnership so far as to render it a trap for the unwary. We must, in this as in other cases, look to the entire transaction in order to judge correctly of its motive and tendency ; and we think, as is said by Gould, J. in Coope *et al. vs.* Eyre *et al.* 1 *H. Bla.* 44; cases of this nature should stand on broad lines, not on subtleties and refinements, the source of litigations and disputes." The conclusion is considered not unwarranted by authorities, that the intentions of the parties may control a question of partnership *inter se*, and the charge of the Court below to the jury on this point was erroneous.

III. The idea that the articles of partnership cannot be varied and that the same community of interest in the capital stock, which existed at the commencement of the partnership must continue to its close and until a final dissolution takes place, finds no sanction in the law. *Gow* 209 ; 1 *Sim. & Stu.* 600; 8 *Con.* 168 ; 6 *Wend.* 263. Such would seem, however, to be the notion prevailing in the opinion of the Court below, when the position is distinctly asserted, " that the Court does not recognise any such thing as a dissolution '*pro tanto*' in a co-partnership for a single adventure, enterprise or business; there must be a *total* severance." The case of Jackson *vs.* Stopherd, 4 *Tyrwh.* 330, is a notable instance of the recognition of a partial severance of a partnership. Bayley B. observing on the general rule of law, that one partner cannot maintain an action at law against another, says — " But by special bar-

gain between them, a particular transaction may be separated from the winding up of the general concern, and when thus insulated, is taken out of the general law of partnership, constituting between the partners a separate and independent debt on putting an end to the joint concern." Vaughan B. in the same case, says—"If any matter be withdrawn from the adjustment of the partnership concerns, and made the subject of a distinct settlement, the general rule, that one partner cannot sue another in respect of a partnership transaction, till the whole partnership concerns are adjusted, does not apply." Now it is respectfully contended that this very separation took place between Henry and James Solomon in respect to the sum of $3,500, which forms the only matter in controversy in this record. Both partners consented that $3,500 might be withdrawn by Henry Solomon for his own use, and that James Solomon might leave the same amount in the hands of the factors, on which he wished to realise to himself the whole profit of the sterling exchange.

As a further illustration of the severance as to this particular item of $3,500, let us consider the rights of Henry Solomon to a proportion of the sterling exchange on that sum, supposing it to have been realised. It has been held, in the case of Gray vs. the Portland Bank, 3 Mass. R. 364, that one partner might maintain an action against his co-partners for withholding from him his proportion of the profits of a branch of the business, within the terms of the co-partnership. Could Henry Solomon, in any form of action, recover against James Solomon or his representative, any portion of that exchange? The same evidence which has been adduced on this trial in the Court below, would be conclusive against him, as to his relinquishment of all community of interest in that portion of the profits of the partnership. The rule must then be mutual. The severance of this item, from the general concerns of the partnership, was complete by the assent of the parties, and the arrangement thus made, contravening no principle of law, cannot be impeached.

IV. In support of the instruction to the jury, asked for by counsel for defendant in the court below, reference is made to the following cases and authorities. 4 Tyrwh. 335; Turn. & Russ. 523; 5 Barn. & Ald. 954; 3 Mees. & Wels. 357; Jacob 144. Each partner may give separate instructions to their joint factor. Stor. on Part. 5; 1 Dougl. 371; 1 H. Bla. 37; 9 Bingh. 297; 2 Johns. Cas. 329; 8 Cra. 50; 3 Mason. 138.

V. The principles on which new trials are granted, on account of a misdirection of the Judge, are very clear. It may not be amiss, by way of refreshing our recollections on this point, to refer to the observations of a learned writer on this subject. "So universal is the practice" says he (in commenting on the granting new trials for a misdirection of the Judge in matters of law,) and with such deep reverence are the principles of law regarded, that perhaps there cannot be found one instance of injustice done, in a clearly ascertained case of misdirection, where a new trial has not been directed. It is a favourable ground of relief, has the ear of the court, is treated with marked respect, has every facility afforded, and when successful, the relief is uniformly granted without costs. The error of the judge calls for correction as a matter of right, not of discretion, and a motion for a new trial on this ground is an appeal to the well settled principles of law."—*Graham on New Trials* 261.

How was the charge of the Court to have been understood by the jury, when they were told, that verbal admissions "when deliberately made or precisely identified are *usually* received as satisfactory?" Are they ever received otherwise? In the words of the same author from whom the quotation is made, is not the "evidence they afford often of the most satisfactory nature? And when acted upon by others, are not the admissions conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced?" Why suggest a doubt in the minds of the jury as to the satisfactory nature of the repeated statements and declarations of James Solomon that "Henry had been more fortunate than he, had saved the most of his part of the cotton, and he (James) should lose his?" Were they not evidence? Such a suggestion could not fail to lead the jury to illegal results, and such has been the effect. This misdirection then affected the result and the case at bar is within the rule.

VI. In support of the sixth assignment of error, reference is made to the case of Thomason *vs.* Smithson 3 *Verm. R.* 272; *to* 2 *Desaus.* 323; 1 *Bibb* 253; 1 *Day. R.* 156; 3 *Hayw.* 192; 1 *Conn. R.* 711; 3 *Wheat. R.* 527.

VII. And lastly to support the seventh assignment of error, reference is made to the case of Gaither *vs.* Caldwell 1 *Dev. & Batt.* 508; 1 *Desaus.* 134; 2 *John Ch. R.* 92; 6 *Wheat. R.* 468.

Poe & Nisbet for the defendant in error.

*By the Court.*—WARNER J. delivering the opinion.

The complainant in this case filed her bill against the plaintiff in error in the Court below, calling upon him to account for the proceeds of a lot of cotton purchased by the complainant's intestate, James Solomon, in his lifetime, and the defendant as co-partners. From the record as transmitted to this Court, it appears that the defendant and his brother James, advanced about the sum of thirty-five hundred dollars each, to purchase cotton on speculation, to share equally of the profits and loss of the adventure. In pursuance of the agreement between them, about three hundred and fifty bales were purchased and forwarded to Wimberly & Jones, their factors in Savannah, which were by them shipped to Isaac, Low & Co. at Liverpool.

It also appears that Wimberly & Jones drew against the cotton so shipped by them to Liverpool, the sum of seven or eight thousand dollars.

After the cotton had been shipped to Liverpool, Henry Solomon, the defendant, proposed to draw on Wimberly & Jones on account of the cotton, the sum of thirty-five hundred dollars, for his individual use; to which James Solomon assented, but declined drawing any money for himself, saying he had no use for the money, and wanted the benefit of the sterling exchange, &c. The cotton was sold in Liverpool, and the proceeds, over and above the sum drawn by Wimberly & Jones, was two thousand and thirty-six dollars, including the sterling exchange, which was equally divided between the partners.

It also appears from the record, that suit was instituted by the partners against Wimberly & Jones, for the money drawn by them against the cotton remaining in their hands, and a judgment rendered therefor, for the sum of four thousand four hundred and seven dollars and nine cents, which has never been collected, Wimberly & Jones having become entirely *insolvent.* The complainant, as the adm'x of James Solomon, now claims the one half of the thirty-five hundred dollars drawn by Henry Solomon against the cotton, in May 1840, for his individual benefit, and that he account with her for the proceeds of the sale of the cotton, &c. which has come into his hands as one of the partners in the joint adventure.

The defendant refuses to account with the complainant, on the

ground that the drawing the thirty-five hundred dollars, in May 1840, from Wimberly & Jones, by the consent of his co-partner, was a *dissolution* of the co-partnership to that extent, and, therefore, he has a legal right to appropriate the amount so drawn to his individual use, without accounting to his co-partner therefor. On the trial of the cause, the jury found a verdict for the complainant, for the one half of the thirty-five hundred dollars, with interest thereon from May, 1840. The case now comes before this Court on a writ of error and bill of exceptions to the charge of the Court below, to the jury.

[1.] The Court below charged the jury—"If the answer of the defendant and other evidence satisfies them, that Henry Solomon and James Solomon, purchased the cotton jointly, paid equal portions of the purchase money, were to pay equal portions of the expenses and transportation of the cotton, and were to share in the losses and profits, it is a co-partnership. There is no difference between a joint adventure, when the joint adventurers purchase jointly, and are to participate in the losses and profits, and a co-partnership. Such an adventure is a co-partnership."

"The contract of co-partnership imports entire good faith between or among the partners. Partners are bound to use the partnership property for the benefit of the partnership interest, therefore, if one partner draws upon the partnership funds and applies the proceeds to his own individual use, he is liable to account to his co-partner for a moiety, with interest from the time he received the fund so drawn. The interest each partner has in the partnership property, is his share in the surplus, after the partnership accounts are settled, and all just claims satisfied."

"The only ways a co-partnership for a single adventure, enterprise, or business, can be dissolved are—first, by the extinction or destruction of the subject of co-partnership; or secondly, by a total separation or severance of it, before the completion of the business or enterprise; or thirdly, by a completion or ending of the adventure, business or enterprise. The Court does not recognise any such thing in law, as a dissolution *pro tanto* of a co-partnership for a single adventure, enterprise or business—there must be a total severance. If James Solomon, when he gave Henry Solomon leave to draw the thirty-five hundred dollars against the cotton, for his (Henry Solomon's) use, agreed also, that he would take the risk of the failure of the Savannah factors and Liverpool consignees, and that the future loss should fall upon him, then the jury ought to

find for the defendant, otherwise for the complainant. With respect to verbal admissions, they ought to be received with great caution, and if made by a party when ignorant of his rights, are not binding upon him; yet, when made deliberately, and precisely identified, are usually received as satisfactory."

Defendant's counsel asked the Court to charge that it was competent for James and Henry Solomon, during any period of the adventure, to have severed by agreement any part of their interest in the subject matter of the enterprise; therefore, if the jury should be of the opinion from the evidence, that James Solomon agreed that Henry Solomon should withdraw thirty-five hundred dollars of his part of the proceeds of the cotton, and that James Solomon preferred to leave the whole of his share with the view to realize to himself the profit of the sterling exchange, they ought to find for the defendant, which the said Court refused to charge; but charged the jury " that it was competent for Henry and James Solomon at any time before the termination of the adventure, to agree to a total separation of their interests, or that Henry Solomon might draw for thirty-five hundred dollars and appropriate the same to his own use, and if James Solomon assented to it, and that James would run the risk of future loss, then the jury would find for the defendant."

We have carefully examined the instructions given to the jury by the Court in this case, in reference to the law of partnership, and give our sanction to most of the principles advanced by the Court below, as applicable to the case *then before it.* If, however, the Court intended to be understood as saying, that co-partners, as between *themselves,* could not alter, modify, or dissolve a co-partnership for a single adventure, enterprise, or business, by contract or agreement, then we are of the opinion the Court below erred in its judgment as to the law. Partnerships for a single adventure, enterprise, or business, are formed by agreement between the partners, and where no certain limit is fixed for their duration, may be dissolved at the pleasure of either of the partners. *Story on Part.* 286, *sec. 269;* 3 *Kent Comm.* 53.

The co-partnership existing by the contract of the parties, [2.] may be modified, altered, or dissolved by contract, as between themselves, either in the whole, or in part, provided such contract does not violate any principle of law, or public policy. This portion of the charge of the Court below is assigned for error, and unexplained by the other portions of the charge, we should have

felt bound to reverse the judgment below on that ground.   But when we take the whole charge of the Court, and consider its practical application to the facts before it, we do not think the jury were misled by the instructions of the Court.   The question upon which the case mainly turned was, whether the drawing the $3,500 by Henry Solomon in May, 1840 for his own use, from Wimberly & Jones the factors of the co-partners, with the consent of James Solomon, was a dissolution of the co-partnership to that extent, so as to protect Henry Solomon from any loss occasioned by the failure of Wimberly & Jones, and throw the same entirely on James Solomon the other partner, who did not draw any money from the Savannah factors.   The Court told the jury, "it did not recognise any such thing in law, as a dissolution *pro tanto* of a co-partnership for a single adventure, enterprise, or business; there must be a total severance.   If James Solomon, when he gave Henry Solomon leave to draw the thirty-five hundred dollars against the cotton, for his (Henry Solomon's) use, agreed also, that he would take the risk of the failure of the Savannah factors and Liverpool consignees, and that the future loss should fall upon him, then the jury ought to find for the defendant, otherwise for the complainant."   The original contract of co-partnership, the purchase of the cotton in pursuance of it, and the joint interest of the partners in it, is distinctly admitted.   While the cotton was in the hands of the factors each partner was *jointly* interested in it, and had the right to control it, or the proceeds thereof.   Henry Solomon, when he drew the thirty-five hundred dollars, had a perfect right to have drawn seven thousand dollars had he desired to have done so, and his receipt would have been good against both partners ; for one partner is considered in law, as the agent of the others with regard to the partnership property.   In our judgment there is no foundation in law for the position assumed by the plaintiff in error, that the drawing the thirty-five hundred dollars by Henry Solomon of the *joint funds* for his own use, with the consent of James, his co-partner, worked a dissolution of the co-partnership; and thereby exonerated Henry Solomon from the responsibilities of the original co-partnership contract.   To have exonerated him from liability to account with his co-partner for loss sustained by the failure of Wimberly & Jones, he should have established to the satisfaction of the jury, in the language of the Court below, that James Solomon "*agreed also, that he would take the risk of the Savannah factors and Liverpool consignees and that the future loss should fall upon*

*him.*" This would have been such an alteration, or modification of the original contract of partnership for this single adventure, as would have excused him from accounting to his co-partner for such loss. The jury, however, by their verdict, negative the idea that any such agreement was proved, by finding for the complainant, and in our judgment their verdict is supported both by the law and the facts of the case, except as to the question of interest, which will now be considered.

The Court below charged the jury that " the contract of [3.] co-partnership imports entire good faith between, or among the partners. Partners are bound to use the partnership property for the benefit of the partnership interest, therefore, if one partner draws upon the partnership funds, and applies the proceeds to his individual use, he is liable to account to his co-partner for a moiety, with interest, from the time he received the fund so drawn." This proposition is undoubtedly true where the partnership funds have been abstracted by one of the partners from the legitimate business of the partnership, without the *knowledge or consent* of the other partners, as when there has been a *fraudulent* misapplication of the partnership funds by one of the partners, for his own *private speculations*, or he has employed the same in his own *private trade;* in all such misapplications of the partnership funds, the delinquent partner would be chargeable, with not only the interest on the funds so *misapplied*, but also with the profits he has made thereby. *Sto. on Part.* 342, *sec.* 233; *Caldwell* vs. *Leiber*, 7 *Paige Ch. R.* 483.

Does the record, in this case, shew that there was any *fraudu-* [4.] *lent misapplication* of the thirty-five hundred dollars by Henry Solomon in May, 1840, the time at which he drew that sum from Wimberly & Jones? We think not, but on the contrary, that amount was drawn by him with the *express assent* of James Solomon, his co-partner, and there was no *default* on the part of Henry Solomon with regard to that portion of the partnership funds so drawn by him with the consent of James, until a settlement was demanded and he refused to account for the same. *Campbell* vs. *Mesier & Dustan*, 6 *John. Ch. R.* 21. When he was required by his co-partner to account for that portion of the *joint* funds so drawn by him with his consent, on a final settlement of the co-partnership transactions, his refusal then so to account, was in our judgment, to use the mildest term, a *misapplication* of the partnership funds to his individual use, and, consequently, he ought to be charged with interest from the time of such demand and refusal, which in the

absence of other evidence appearing on the record, was, on the 12th day of August 1842, the time of the commencement of the suit by the complainant against him. We are also of opinion, that the Court below very properly refused the instruction asked by the counsel for the defendant. The instruction prayed for, assumed the position, that if the jury should believe, from the evidence, that James Solomon agreed that Henry Solomon should withdraw thirty-five hundred dollars of his part of the proceeds of the cotton, and that James Solomon preferred to leave the whole of his share with the view to realize to himself the profit of the sterling exchange, then the co-partnership was dissolved, and they ought to find for the defendant. From what has already been said, the consent of James that Henry should draw the thirty-five hundred dollars, and the refusal on his part to draw any thing for himself, did not, in our opinion, work a dissolution of the copartnership. The money drawn by Henry Solomon was the *joint* property of both partners, being a part of the proceeds of the cotton purchased with their *joint* funds. The money remaining in the hands of Wimberly & Jones, was the joint property of both partners subject to be drawn by either or both. If James Solomon preferred the money to remain in the hands of Wimberly & Jones for the purpose of realizing the sterling exchange, or for any other purpose, that did not affect the original contract of partnership. So long as the contract of partnership continued, each partner was bound by the acts of the other, in relation to the partnership property. The instructions given to the jury on that branch of the case, we think were proper and unexceptionable, and constitutes no ground of error.

[5.] With regard to verbal admissions, the Court charged the jury, "they ought to be received with great caution, and if made by a party when ignorant of his rights, are not binding upon him; yet, when made deliberately, and precisely identified, are usually received as satisfactory." When we take into consideration that the admissions relied on were the verbal declarations of a *deceased person* deeply affecting his estate, the admonition of the presiding Judge to the jury, was not, in our judgment, improper.

The declarations of deceased persons are often-times easily proved, but extremely difficult to explain or contradict, for the reason, the voice of him who is alleged to have made them is hushed in the silence of the grave. Where one, through a mistake of the law, acknowledges himself under an obligation which the law will not impose upon him, he shall not be bound thereby; as, where the

indorser of a bill of exchange or promissory note, who is discharged from payment thereof by want of notice under the law, yet, being ignorant of his legal rights, promises to pay it, he will not be bound by such promise. *Warder et al.* vs. *Tucker,* 7 *Mass. R.* 449; *Garland* vs. *Salem Bank,* 9 *Mass. R.* 389; *Goodall and others* vs. *Dolley,* 1 *Term R.* 712; *Lawrence* vs. *Beaubien,* 2 *Baily R.* 623.

The *thirty-five hundred dollars* having been drawn by the defendant with the *express assent* of his co-partner, we are of the opinion, that the Court below erred in its instructions to the jury that the complainant was entitled to interest from the time he drew the money in May, 1840; it being the opinion of this Court that he was not entitled to interest thereon until a demand made, and a refusal by defendant to account to his co-partner for the one-half of the money so drawn; and there must be a new trial on that ground; unless the complainant shall, on or before the first day of the next succeeding term of the Court below, enter a remittitur on the record thereof, for the interest found by the jury from May, 1840 up to the 12th day of August, 1842, the time the demand was made by the institution of the complainant's suit. All the other assignments of error appearing on the record, are overruled.