19337. HOBBS *v.* NEW ENGLAND INSURANCE CO.

Submitted May 15, 1956—Decided July 12, 1956.

Judge Perryman. McDuffie Superior Court. January 14, 1956.
*Randall Evans, Jr.,* for plaintiff in error.
*Knox & Neal, Earle Norman,* contra.

ALMAND, Justice.   A. Claude Hobbs, as the owner of a house, the subject matter of a policy of fire insurance issued by New England Insurance Company, with a loss-payable clause payable to the Bank of Thomson, which held a deed to secure debt against the insured premises in the sum of approximately $1,100, sued the insurance company.   He alleged a total loss of $1,500, the face amount of the policy, and prayed a judgment for the use of the bank of $1,100, and for his own use $400, and for $500 as attorney's fees and $375 as damages, and interest.   The defendant by its answer denied all the material allegations of the petition, and set up an affirmative defense, viz., that the policy sued upon contained a provision that the insurer would not be liable for loss occurring while the premises had been unoccupied for a period of 60 consecutive days unless otherwise provided in writing, and that the house had not been occupied for 60 consecutive days before the fire.   On the first trial of the case, the court directed a verdict in favor of the defendant on the plaintiff's prayers for attorney's fees and penalty.   The jury returned a verdict for the plaintiff for the face amount of the policy and interest.   On motion of the defendant, the court granted a new trial as to the amount of the verdict over the amount due the Bank of Thomson.   The plaintiff did not move for a new trial as to the direction of a verdict for the defendant on the issues of attorney's fees and penalty.   On the second trial, the court directed a verdict in favor of the defendant.   The motion of the plaintiff for a new trial as amended was denied, and by bill of exceptions he assigns error on that order and on other rulings of the court, one ruling being that Ch. 38-12 of the Code of Georgia of 1933 violates the Constitution of Georgia.   The bill of exceptions was directed to the Court of Appeals, and by that court transferred here because of the ruling that the aforementioned statute was unconstitutional.

■   On July 23, 1955, during the June term of court, the plaintiff offered an amendment to his petition, in which he prayed judgment for $477 of the principal amount due on the policy, $375 as 25% penalty, and $1,000 as attorney's fees on account of alleged bad faith of the defendant, which amendment was allowed subject to demurrer and objection.   On September 5, 1955, during the September term, the defendant filed general and

special demurrers to this amendment. The court overruled the general demurrers. To the order overruling certain special demurrers the plaintiff excepts and assigns error.

■ Error is assigned on the overruling of the plaintiff's motion that the court refuse to consider the defendant's special demurrers, because they were filed too late. Though a defendant must file his demurrers to the original petition on or before the time stated in the process as the return date thereof (Ga. L. 1953, Jan.-Feb. Sess., p. 21; Code, Ann. Supp. § 81-301), we know of no statute or rule that requires the defendant to file within any specified time his demurrers and objections to a material amendment to the plaintiff's petition. *Dixie Broadcasting Corp.* v. *Rivers,* 209 *Ga.* 98 (2) (70 S. E. 2d 734) ; *Southeastern Stages* v. *Abdella,* 77 *Ga. App.* 772 (2) (50 S. E. 2d 85). This ruling was not error.

■ The court struck the portion of the plaintiff's amendment which sought to recover penalty damages and attorney's fees by reason of any bad faith of the defendant in not paying the amount due the Bank of Thomson, and to recover attorney's fees for the work of the plaintiff's attorney in the first trial and rendition of the verdict in behalf of the bank. The court ruled that the plaintiff could recover 25% penalty and attorney's fees only upon the amount that the jury might find in favor of the plaintiff in excess of the amount originally found in favor of the bank.

This ruling was not error. On the first trial, the court directed a verdict in favor of the defendant on the plaintiff's prayers for damages and attorney's fees. The plaintiff did not except to this direction, nor move for a new trial. A new trial was granted on the defendant's motion only as to the amount due the plaintiff in excess of the amount due the bank under its loan deed. These rulings became the law of the case, and the court properly ruled that the plaintiff's right to damages and attorney's fees could be based only on the amount that might be found due the plaintiff in excess of the amount found due in favor of the bank.

■ On August 13, 1955, the plaintiff filed in the office of the superior court, as provided under Ch. 38 of the Code of 1933, original interrogatories for answer by the president of the defendant company, and served counsel for the defendant with a

copy of the same. On the trial, the plaintiff's counsel called upon the defendant for the answers to the interrogatories. The bill of exceptions recites: that the defendant's counsel stated "that he had the answers, but objected to having to read them upon the ground that Chapter 38-12 of the Georgia Code of 1933 was unconstitutional," whereupon the plaintiff moved to strike the defendant's answer because of its failure to produce the answers to the interrogatories, which motion was denied. The court ruled that a president of a nonresident corporation defendant could not be compelled to make discovery, and that Chapter 38-12 of the Code of 1933 was violative of the Constitution of Georgia, in that it denied equal protection to persons situated as was the defendant in this case. Error is assigned on these rulings.

The response of the party named in the interrogatories was specified in the bill of exceptions as a part of the record, and is here before us. In the response, it is stated under oath that the party to whom the interrogatories were addressed had no personal knowledge of any of the matters inquired of in the interrogatories, and that the only person of the company who had personal knowledge of the information sought was a named official.

Even if it be conceded (which we do not) that the question of the constitutionality of Chapter 38-12 was properly raised so as to invoke a ruling by the trial court, it was unnecessary for the trial court to pass upon the validity of the statute, because the record shows that there was a sworn response to the interrogatories before the court, and under the provisions of Code § 38-1204 the court would not be authorized to strike the defendant's plea and answer, where the interrogatories were before the court. It was not error to refuse to strike the plea and answer.

■ Under the provisions of the act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 224; Code, Ann. Supp., § 81-1011), counsel for the plaintiff served upon counsel for the defendant a written request for admissions respecting matters which he contended were material and relevant to the case. The defendant filed written objections to the request. The court sustained the objections, that (a) the request sought admissions on issues and facts that had been answered by the defendant in its plea and

answer, and (b) the request was for admissions as to matters which were irrelevant, prejudicial, and surplusage, and which had been answered in the defendant's pleadings, and denied the request for admissions. Error is assigned on this ruling.

The act of 1953, supra, provides that, after defensive pleadings have been filed in any civil case, one party may serve the other with a written request for admissions by the latter as to the truth of any relevant matter of fact set forth in the request. Each of the matters as to which the admission is requested shall be deemed admitted unless the party on whom the request is made, within the time specified in the notice, not less than 10 days, serves upon the party making the request: (1) a sworn statement denying specifically the matters of which admission is requested or setting forth the reasons why he cannot admit or deny these matters; or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant, or that the request is otherwise improper in whole or in part.

The act of 1953 is identical with Rule 36 of the Federal Rules of Practice and Procedure, 28 U.S.C.A., p. 332. In Van Horn v. Hines, 31 Fed. Supp. 346, 348, it is stated that the purpose of this rule "is to expedite trial and to relieve parties of the cost and labor of proving facts which will not be disputed on the trial and the truth of which can be ascertained by reasonable inquiry." The Federal courts applying this rule have held that the request must relate to uncontroverted facts, and that the rule is not to be used to discover facts as such, but should be directed to facts in issue the truth of which is apparent. Knowlton v. Atchison, T. & S. F. Ry. Co., 11 F. R. D. 62 (16). The request for admissions should not be used to cover the entire case or to permit one to request admissions as to controverted facts, particularly where they may constitute the principal issues in the case. Alaska Credit Bureau of Juneau v. Stevenson, 15 F. R. D. 409 (3).

The plaintiff's request for admissions contained 13 paragraphs. Typical of the admissions requested were the following: (a) that the defendant acted in bad faith in not paying the loss; (b) that the plaintiff's counsel had been put to unusual trouble in the first trial and in handling the motion for a new trial and pre-

paration for a second trial; (c) that the defendant was due to pay the plaintiff a stated amount of his fire loss, penalty and attorney's fees; (d) that the defendant's investigating agent, in discussing the fire loss with the plaintiff, was able to notice that the plaintiff was not mentally or physically capable of transacting business; and (e) that the defendant's agent did not pursue all of the available means for investigating the occupancy of the premises at the time of the fire.

All of the admissions requested were either irrelevant or as to controverted matters made issues by the pleadings in the case. The court did not err in sustaining the defendant's objections to the request for admissions.

■ Special grounds 4 and 5 will be considered together. They assign error on the rulings of the court excluding any evidence relating to or affecting the question of that portion of the recovery of the plaintiff for the use of the Bank of Thomson, and all evidence as to the labor and expense of the plaintiff's attorney in seeking to make the defendant pay the amount awarded the bank in the first trial. These rulings were not error. Under the rulings made by the court on the defendant's special demurrers to the plaintiff's last amendment, these matters were restricted by the court's order, and, as we have ruled in division 1 (b), the court correctly eliminated these matters on the second trial.

■ Special ground 6 complains that the court erred in refusing to permit counsel for the plaintiff to testify that he had a contract with the plaintiff whereby he was to receive one-third of the recovery of all sums, including penalty and attorney's fees. The court on objection properly repelled this evidence.

■ On the trial, when one James Gardiner was called as a witness for the defendant and testified to a conversation he had with the plaintiff subsequent to the fire, the plaintiff objected on the ground that the plaintiff at the time of the conversation did not have a sound mind or sound memory, and under Code § 38-1604 (4), as amended by the act of 1953 (Ga. L. 1953, Nov.-Dec. Sess., p. 319), the witness was prevented from testifying as to any communication or transaction with the plaintiff. Error is assigned on this ruling in ground 7. (Obviously, counsel

had in mind Code § 38-1603 and not § 38-1604, as the last-named section refers only to husband and wife, and the act of 1953 cited in this ground of the motion amends Code § 38-1603 (3), which relates to communications and transactions with deceased or insane persons, and we will treat this assignment as referring to Code § 38-1603 (3).)

There is nothing in the pleadings which indicates that the plaintiff was of unsound mind or memory. The witness was questioned as to a conversation he had with the plaintiff before the suit was filed. Whether the plaintiff was or was not of sound mind and memory, or was to be held responsible for any statements made by him, were questions for the jury, and not for the court, to determine. In *Fountain* v. *McCallum*, 194 *Ga.* 269 (11) (21 S. E. 2d 610), it was held that the mere fact that the party who had been adjudged insane previous to the time she was alleged to have made admissions against her interest, she at that time not being in the asylum, was not sufficient reason why testimony as to her admissions should be excluded. See also *Conoway* v. *State*, 171 *Ga.* 782 (3) (156 S. E. 664).

■ The 8th special ground assigns error on the direction of the verdict for the defendant. It is apparent from the record and the briefs of counsel for both parties that the court directed this verdict on the ground that the house covered by the policy had been unoccupied for more than 60 consecutive days prior to the loss. The only evidence on this issue was the testimony of the defendant's agent that about the 18th or 19th of March, 1954, following the fire loss on February 22, 1954, he had a conversation with the plaintiff, who admitted that the insured premises had been unoccupied since December 10, 1953. This agent testified that the plaintiff did have full possession of his mental faculties and was not out of his mind at the time of the conversation. Roy Hobbs, a brother of the plaintiff, testified that the plaintiff had a stroke in the fall of 1953, and that "after he had the stroke and went to the hospital, and ever since, he has not had a sound mind and has not had a sound memory. At this time, he is not of sound mind and is not of sound memory." The plaintiff testified: "I suffered a stroke in the fall of 1953. I don't remember exactly when it was. I got along all right before then, but since that time, I don't get along

well. I can't remember things. The stroke was on my side. I don't remember that man that just got through testifying; I don't remember ever seeing him before. I don't remember his coming and talking with me at my home after the house burned. I know some things and people and to [do] the best I can. I just can't seem to remember things now."

While it is generally true that an explicit, voluntary admission made by a party in any civil proceeding adverse to his own interest is prima facie evidence of the existence of such fact, and unless explained or denied by other evidence may of itself authorize a jury to find accordingly (*William-Hester Marble Co. v. Walton*, 22 *Ga. App.* 433 (4), 96 S. E. 269; *Scott v. Kelly-Springfield Tire Co.*, 33 *Ga. App.* 297 (1), 125 S. E. 773), the question here is whether the statement by the plaintiff that the insured house had been unoccupied for more than 60 consecutive days prior to the loss, in view of other testimony that he was not of sound mind and memory at the time the declaration was made, demanded a verdict for the defendant. In other words, should the jury have been allowed to determine the weight and effect to be given such declaration?

All admissions shall be scanned with care. Code § 38-420. To scan means "to go over and examine point by point; to examine with care; to look closely at or into; to scrutinize." Webster's Int. Dict. Verbal admissions should be received with great caution. *Solomon v. Solomon*, 2 *Ga.* 18; *Miller v. Cotten*, 5 *Ga.* 341. Persons who have not the use of reason, as lunatics during lunacy, are not competent witnesses. Code § 38-1607. The contract of an insane person who has never been adjudged to be insane or of unsound mind, though not void, is voidable except where made during a lucid interval. Code § 20-206. The words lunatic, insane, or non compos mentis, each includes all persons of unsound mind. Code § 102-103. In *Mayor &c. of Gainesville v. Caldwell*, 81 *Ga.* 76 (4) (7 S. E. 99), it was held that a witness having been examined by interrogatories was prima facie mentally competent to testify, and evidence subsequently taken tending to show that he was insane when examined was for consideration by the jury under proper instructions of the court, and not for adjudication by the judge, there being also testimony in favor of sanity. In *Gangi v. Fradus*, 227 N. Y. 452 (125 N. E. 677), one of the ques-

tions before the court was the effect and weight to be given to a declaration against interest made by an infant party. In holding that there were two phases for the jury's consideration—whether or not the declaration was made, and the effect thereof—it was stated that, if the jury found that they were made, they should consider "the conditions and circumstances under which they were made and the effect thereof, and their probative weight and value, which may range from the lowest, or none at all, to conclusiveness. The trial justice may profitably and without error, as the evidence justifies, bring to the jury's attention and guidance the rules of law that the probative effect and value of an admission depend upon the conditions and circumstances under which they were made, the time which has since elapsed and the cogency or reasonableness of the explanation, if any, of the making and other like grounds or conditions." P. 457.

These being evidence that, at the time the plaintiff made the statement to the defendant's agent, he was not of sound mind and memory, the court, under proper instructions, should have left to the jury the determination of whether the plaintiff made such declaration, and if he did, whether or not he was making a binding admission under the circumstances, and if he was so capable, the weight to be given to such evidence.

It follows that the court erred in directing a verdict in favor of the defendant.

*Judgment reversed. All the Justices concur.*