44654. ELDER v. SMITH, by Next Friend, et al.

ARGUED SEPTEMBER 11, 1969—DECIDED FEBRUARY 27, 1970—
REHEARING DENIED MARCH 23, 1970.

462

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Malcolm H. Ringel, Sam F. Lowe, Jr., Edwards, Bentley, Awtrey & Parker, Scott S. Edwards, Jr.,* for appellant.

*Gary & Bach, Robert E. Bach,* for appellees.

EVANS, Judge. The purpose of the summary judgment is not to by-pass a jury trial but to eliminate the necessity therefor when there is no genuine issue of fact, and the moving party is entitled to a judgment as a matter of law. *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442); *Caldwell v. Gregory,* 120 Ga. App. 536 (171 SE2d 571); *Connors v. City Council of Augusta,* 120 Ga. App. 499 (171 SE2d 578). It enables the trial judge to filter out the sham issues in order to avoid needless and time-consuming litigation. But any doubt as to the existence of an issue is resolved against the movant. Thus we must examine the evidence in this light to determine if the movant-appellant carried the burden of removing doubt as to the existence of a jury issue in this case. Examination of the defendant's testimony by deposition discloses that the defendant in "jacking up" the vehicle was aware that it was doing some slipping, and while the plaintiff was under the automobile, the jack slipped, and the automobile fell on the plaintiff. It is argued that the plaintiff had knowledge that the jack was slipping, and even if the de-

fendant failed to warn the plaintiff, the plaintiff having such knowledge, assumed an obviously dangerous position in reference thereto, and cannot complain of the failure of the defendant to warn him. It is true that the defendant testified that they both knew the jack was slipping or skipping and he told the plaintiff to get out from under the car; that he knew the jack was defective for the purpose for which they were using it, and he was not touching the jack when it "stripped loose," causing the car to fall on the plaintiff. But the plaintiff testified on deposition that he did not examine the jack at all; that the defendant had told him that the defendant's father, another defendant, had wanted the son to work on the automobile of the uncle (the third defendant); that plaintiff offered to assist the defendant since he (the defendant) was not repairing the automobile properly; that it was "jacked up" by the defendant; that plaintiff did not know that the jack was "no good." The deposition of the defendant was that he did not ask the plaintiff to help him but a subsequent question and answer show that he asked the plaintiff "to show me what had to be done, because he said I was doing it all wrong"; that plaintiff obtained a wrench from another locality to assist him, and that they worked together to repair the car; that the jack did not appear defective in any way but that it was defective for the use to which it was put and "any other time it wasn't." Defendant started "jacking it" down when he saw the jack was slipping with the plaintiff under the car, and he was back of the car when the car fell, but that he wasn't touching it when the car fell; that he knew the jack was "skipping" and he told the plaintiff to get out from under the car. In the answer to one question the plaintiff may have known the jack slipped at least once. The question: "It slipped a little bit that time, didn't it?" Answer: "Yes, sir." Yet, a close scrutiny of these cross examination questions and answers shows many questions about slipping, and it appears that the witness is speaking of a lug wrench or a spring slipping; yet none of this testimony is sufficient to conclusively show he had knowledge of the defective jack which caused the car to fall on him. It was still a jury question.

The deposition of the plaintiff's mother was that, when she

arrived at the hospital after the car fell on her son, the defendant was present, and was crying: "Oh, my God, it's my fault," and that he said this a number of times.

It is noted that the plaintiff testified that the defendant was at the jack and operating it at the time it fell, and that he did not say anything to him at all; that the jack was not going up at the time the jack fell. He was not asked specifically whether the defendant told him to get out from under the car because the jack was slipping, but from the questions and answers in the deposition it shows the plaintiff's testimony is contradictory of the defendant's, as to how the alleged injury occurred. Examination of the depositions clearly shows that the defendant admits knowledge of the defective jack, but claims the plaintiff knew of such defect in the jack and thus assumed an obviously dangerous position in reference thereto. The defendant claims he advised the plaintiff that the jack was slipping and to get out from under the car. Examination of the plaintiff's testimony shows he testified that no such warning was given.

But above all, the defendant's admission against his interest at the hospital to the mother of the plaintiff makes an issue for determination by a jury as to whether or not a claim exists. In *Central of Ga. R. Co. v. Mosely*, 112 Ga. 914 (3) (38 SE 350) the Supreme Court held that the court erred in refusing to admit evidence by the defendant that the plaintiff had "admitted 'that the injury was caused by his own fault, and that nobody was at fault but himself.'" This evidence, the court said, created an issue for the jury to decide. Similarly, see *Wade v. Drinkard*, 76 Ga. App. 159 (5) (45 SE2d 231); *Rentz v. Collins*, 51 Ga. App. 782 (2) (181 SE 678); *Hobbs v. New England Ins. Co.*, 212 Ga. 513, 519 (93 SE2d 653) and citations at page 520. Of course, the rule of law is that such admissions shall be scanned with care. *Code* § 38-420. But whose duty is it to do this? A jury alone. *Phoenix Ins. Co. v. Gray*, 113 Ga. 424 (2) (38 SE 992); *Smith v. Page*, 72 Ga. 539, 544; *Burk v. Hill*, 119 Ga. 38 (45 SE 732); *Wootten v. Braswell*, 48 Ga. App. 312 (2) (172 SE 679).

From examination of the testimony, neither the alleged negligent acts of the plaintiff nor of the defendant are so plain,

palpable and undisputable that a trial court could declare their conduct to be negligent as a matter of law on motion for summary judgment. There is a question for the jury as to whether the plaintiff exposed himself to a foreseeable unreasonable risk of harm. To say this question even exists as to the plaintiff's negligence, of necessity imputes that the defendant created a foreseeable unreasonable risk of harm to the plaintiff.

All of these questions should be resolved by a trial in the ordinary manner rather than by *summary* adjudication, and the trial court correctly overruled the defendant's motion for summary judgment.

*Judgment affirmed. Bell, C. J., Hall, P. J., Deen, Quillian and Whitman, JJ., concur. Jordan, P. J., Eberhardt and Pannell, JJ., dissent.*

PANNELL, Judge, dissenting. On motion for summary judgment by a defendant in a tort action in which the petition alleged that the defendant "negligently caused" an "automobile" to fall upon the plaintiff, it appeared without dispute that plaintiff, who had some experience in the matter, volunteered to help the defendant install some shock absorbers on an automobile, and that in the process it was discovered by both parties that an automobile jack being used to raise and lower the automobile was doing some slipping and that in the course of the operation while the plaintiff was under the automobile, the jack slipped and the automobile fell on the plaintiff. Such evidence refutes the charge that the defendant negligently caused the automobile to fall upon the plaintiff and further shows that the failure of the defendant to warn the plaintiff that the jack would slip, even if negligent, was not the causative factor, as the evidence shows without contradiction that the plaintiff knew of such defect and discovered it at the same time as the defendant. One who has knowledge of a defect and voluntarily assumes an obviously dangerous position in reference thereto can not complain of the failure of another to warn him of such defect. *Wade v. Roberts,* 118 Ga. App. 284, 287 (163 SE2d 343); *Beasley v. Elder,* 88 Ga. App. 419 (1, 2) (76 SE2d 849). In my opinion, the trial court erred in overruling the defendant's motion for summary judgment.

· The ruling of the majority is based primarily upon an assumption the evidence fails to show the plaintiff knew the jack was defective. In support of this they state that the plaintiff testified that he did not examine the jack at all (see page 48 of the record) and that plaintiff's statement further that he did not know that the jack was "no good" (page 48 of the record). Both of these statements were made about his knowledge prior to his subsequent discovery that the jack was slipping (see pages 87 and 88 of the record in which the following questions were asked and the following answers were given by the plaintiff): "Q. Now at the time he jacked it down this first time did the jack itself drop down any more than he wanted it to? A. I think it did. Q. It slipped a little bit that time, didn't it? A. Yes, sir." And then again referring to the first time: "Q. And that is when the spring popped and also when the jack slipped down, is that right, now? A. He took the wheel off before the jack slipped." These questions were asked after numerous answers to other questions in which the plaintiff said the lug wrench, used to hold the spring down so that the shock absorbers could be installed, had slipped. There was a prior area when this questioning was going on where there was some confusion as to what was doing the slipping, but the questions above and the answers above cleared up the matter. This testimony related to the "first time" they jacked the car up and were letting it down to exert pressure on the wrench to hold the spring. The occasion when the car was jacked up and the plaintiff crawled under it and was injured was the third or fourth time it had been jacked up and let down (page 91 of the record).

The majority seemingly questioned the fact that the plaintiff was a volunteer because the defendant testified that after the plaintiff had volunteered to show him what he was doing wrong that he, the defendant, asked the plaintiff to "show me what had to be done." This constituted no more than an acceptance of the help already volunteered.

The majority also relies upon a contention that the plaintiff's testimony raises an issue as to whether the defendant was operating the jack at the time it failed. While the plain-

tiff testified that he had called the defendant to let the jack down and testified that he was letting it down at the time it fell (pages 51 and 90 of the record), he subsequently on cross examination said that he really did not know whether the jack slipped down or slipped out from under the bumper (page 92 of the record). Whether or not the defendant was operating the jack was immaterial as there is no evidence whatsoever that he caused it to slip, other than the statement of the defendant, which he denied making, testified to by one of the witnesses that the defendant was crying "Oh, my God, it's my fault," proves nothing other than it was the defendant's opinion that it was his fault. An admission of fault admits nothing unless that admission be coupled with facts showing fault. Any facts showing it was his fault are completely lacking, and the evidence of the defendant having pierced the pleadings alleging it was his fault and the plaintiff having presented no testimony contrary thereto, the defendant as to this fact is entitled to prevail on the motion for summary judgment. The most that the defendant's statement could mean, under the evidence, was that he was following the plaintiff's instruction in lowering the jack which the plaintiff and the defendant knew had previously slipped during such operation. The plaintiff assumed the risk of the jack's slipping, he having had prior knowledge that it would slip when operated. There was a lot of conflicting evidence in the case between the parties, but there was no conflict on any material fact essential to the determination of the motion for summary judgment.

I am authorized to state that Presiding Judge Jordan and Judge Eberhardt concur in this dissent.