No. 79.—Samuel A. Williams, William Alexander and Robert S. Burch, plaintiffs in error, *vs.* Jasper M. Chapman, defendant in error.

[1.] Where a party seeks to impeach the testimony of a witness, on the ground that he has made contradictory statements, it is incumbent on the party to announce, when so required, the statement he seeks to contradict, that the Court may judge of its materiality.

[2.] The rule requiring the party to lay the foundation for impeaching a witness, by first inquiring of the witness whether or not he has made the statements, does not apply where the evidence to impeach the witness is his sworn depositions, previously taken in the same cause.

[3.] Testimony offered, avowedly to impeach the credit of a witness, by showing contradictory statements, cannot, in the argument before the Jury, be used for a wholly different purpose.

[4.] Where the issue before the Jury is, whether a party has waived a lien given him by contract, or by operation of law, it is error in the Court to charge, that the testimony should be *clear* and *explicit*. It is sufficient that the Jury should be satisfied of the fact.

Assumpsit, &c. in Hancock Superior Court.  Tried before Judge Sayre, April Term, 1849.

Daniel A. Williams, William Alexander and Robert S. Burch, being sureties for one Sidney R. Crenshaw, took from him, as

collateral security, on 24th January, 1845, a transfer and assign ment of all his demands in the hands of Jasper M. Chapman, against persons in the State of South Carolina.

Suit was commenced on this transfer against Chapman, alleging that he had collected on these claims three hundred dollars, which he refused to pay over. The defendant pleaded, that by contract with Crenshaw, he was to retain three hundred dollars out of the amount collected, for his services as agent in selling gins and making collections; and, also, that he was, by the general Law of Lien, entitled to retain the amount due for his services out of the collections made by him.

Three several commissions were taken out by the plaintiffs below, for the examination of Sidney R. Crenshaw as a witness, and one at the instance of defendant.

On the trial, the plaintiff having read in evidence the last depositions taken by him, defendant's counsel proposed to read the three other depositions, for the purpose of contradicting the depositions read by plaintiff. Counsel for plaintiff demanded that the statement or statements proposed to be contradicted should be specified. Defendant's counsel declined so to do. The Court overruled the demand, and plaintiffs excepted.

Counsel for plaintiffs objected to the reading of a portion of these depositions, going to show that the debts for which plaintiffs were sureties, had been paid off—there being no plea of payment.

The Court overruled the objection, and plaintiffs excepted.

Evidence was introduced by the plaintiffs to show that the defendant had waived his lien, if any he had, by promising to account with the plaintiffs. On this point there was contradictory evidence.

The Court charged the Jury, among other things, that the defendant might waive his lien, either expressly or by implication, but " the evidence showing an express or implied waiver, must be clear and explicit." To which charge plaintiffs excepted.

And on these several exceptions error has been assigned.

L. H. STEPHENS, for plaintiffs in error.

JAS, THOMAS, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Daniel A. Williams, William Alexander and Robert S. Burch, being bound as sureties for Sidney R. Crenshaw, the latter, by a written instrument bearing date 24th of January, 1845, assigned to them all of his demands in the hands of Jasper M. Chapman, against persons living in the State of South Carolina, as collateral security for the payment of $567, with interest from the time of making the transfer. Williams, Alexander and Burch brought an action of *assumpsit* against Chapman, in which they allege, that at the date of the assignment, he held in his hands assets of Crenshaw's amounting to $1000, and that he had notice of the transfer; that on the 15th day of January, 1847, the defendant collected on these claims $400, which he refused to pay over.

The defendant pleaded the general issue, and farther, that Crenshaw had, previous to making the assignment of his effects, agreed to pay him $300 out of the money to be collected in South Carolina, for attending to his business for the year 1846, in selling gins and collecting his debts.

The plaintiffs, on the trial, read in evidence the depositions of Crenshaw, and after closing their case, the defendant offered three other sets of depositions of Crenshaw, all taken in this case. Plaintiffs' counsel requested to be informed for what purpose this testimony was sought to be introduced. The defendant's counsel replied, that they were offered with a view to contradict the depositions of the witness, as read by the plaintiffs. Plaintiffs' counsel then insisted, that the statements proposed to be discredited should be specified. Defendant's counsel declined making any specification, and the Court decided that the plaintiffs had no right to make this requisition; but that the depositions were admissible generally, and without restriction, for the object indicated; and the first error assigned is to this judgment of the Court below.

[1.] After a witness has been examined in chief, his *credit may be impeached,* says Mr. *Greenleaf,* in various modes, besides that of exhibiting the improbabilities of his story by a cross-examination—

1. By *disproving the facts* stated by him, by other witnesses.

2. By general evidence affecting his credit for veracity.

3. By proof that he has made statements out of Court, contrary to what he has sworn at the trial.

*But it is only in such matters as are relevant to the issue that the witness can be contradicted.* 1 *Greenlf. Evid.* §§461, 462. If, then, the credit of a witness can only be impeached under this third head, by showing that he has made contradictory statements upon matters relevant to the issue, is it not indispensably necessary that the party proposing thus to discredit him, should specify *wherein*, in order that the Court may know that it is in a matter relevant to the issue? Otherwise, by involving the witness in contradictions in matters wholly immaterial to the issue, his character for truth might utterly be destroyed before the Jury, in direct violation and disregard of the limitation contained in this rule of evidence.

[2.] But the argument has taken a wider range, and the point made in the assignment of errors, and discussed before us is, whether or not it was competent for the defendant to discredit Crenshaw, by introducing in evidence other depositions made by him, in the same case, contradictory of those offered by the plaintiffs.

The doctrine in the *Queen's Case*, (2 *Brod. & Bing.* 129,) namely, that if it be intended to bring the credit of a witness into question, by proof of any thing that he may have said or declared touching the cause, the witness must first be asked, upon his crossexamination, whether or not he has said or declared that which is intended to be proved, has been repeatedly recognized and enforced by this Court; and in *Kinsey vs. Johnson*, (*ante, p.* 428,) recently decided at Gainesville, we went so far in favor of this practice, as to require the party to renew the commission, in order to afford the witness an opportunity of giving such explanation or exculpation of her conduct, if any there might be, as the particular circumstances of the transaction might happen to furnish; and although at the time when that opinion was delivered and written out, I was not aware that there was the authority of any adjudicated case to sustain it, I am glad to find, by my present re-examination of the principle, that such is the fact. See *Kimball vs. Davis*, 19 *Wend.* 437. 25 *Ib.* 259.

But we are not willing to go farther than this. Nor does the reason of the rule, as adopted in the *Queen's Case*, apply in the present instance. It was intended, mainly, *to prevent surprise;*

it being considered both just to the witness and the party, not to allow the witness to be impeached, perhaps in his absence, when there was no opportunity of making explanations, by proving, that in some loose conversation, not distinctly understood or recollected, that he had said something inconsistent with his present evidence, when no attempt had been made to bring the facts to his recollection; but how does this apply to a previous examina‑ tion taken *under oath*, when the witness was under obligation to tell the *whole* truth ?

It is well settled, that a witness may be contradicted by the contents of a letter which he had written, containing statements at variance with his evidence, without laying the foundation for it, as required by the rule in the *Queen's Case. DeSobry vs. De-Laistre*, 2 *Har. & J.* 191. And, also, by his recitals in a written contract. *Drew vs. Wadleigh*, 7 *Greenlf.* 94. So the testimony of a witness, taken down in writing by a Magistrate, may be used to show contradictory statements made by him. 1 *Hawk's Law and Equity R.* 344. And the same doctrine is recognized in *Pearce vs. Furr*, 2 *Smede & Marshall's R.* 54. These precedents appear to us to be in accordance with principle, and if sound law, they must control this case.

[3.] Another question made by the record is, whether, where evidence is received to contradict or discredit a witness, it may be used for another and wholly different object, to wit : to show that Crenshaw, the principal in the debt, wherein the plaintiffs were securities, had paid off and discharged the liability himself? We think not. We do not say that the interrogatories of Crenshaw might not have been offered for this purpose ; but we hold, that under their introduction, avowedly for a totally different purpose, it could not be done. At the same time, we cannot subscribe to the position that the omission, by the defendant, to plead payment, would have excluded this proof. For this being an equitable action, any thing which goes to show that the plaintiffs *ex equo et bono*, viz : in good faith and conscience, ought not to recover, will defeat the cause of action, and consequently may be given in evidence under the general issue.

[4.] The presiding Judge, among other things, charged the Jury, that the testimony, to take away the right of lien in the defendant, either by express agreement, or by operation of law,

must be *clear* and *explicit;* and it is complained that the rule of evidence, as thus expounded, is too stringent.

In *criminal cases*, the mind of the Jury must be satisfied beyond a reasonable doubt; and, in some few instances, the law prescribes the *number* of witnesses—as, in cases of high treason and perjury, *two* witnesses are essential. Indeed, in certain classes of *civil cases*, the rule laid down by Judge *Sayre* would not be deemed too strong. As, for instance, where you propose, by *parol*, to change the terms of a written agreement, on the ground of fraud or mistake, the evidence, say the Courts, must be *clear* and *irrefragable.* So in one of the points in this case. It is suggested, that the order given by Crenshaw to the plaintiffs on Chapman, his collecting agent, is ante-dated just one year, and that it should bear date January, 1846, instead of January, 1845. To change the face of this paper, however, the proof should be *clear* and *explicit;* but we apprehend this case, although the proof seeks to divest a vested right, either under the express agreement set up by the defendant, or by operation of the Law of Lien, does not fall within the reason of any of the foregoing principles. The law rarely interferes as to the *quantity* or *measure* of proof; and it is best not to undertake to subject its sufficiency to legal definition or control. In the nature of things this cannot be done. *Quæ argumenta ad quem modum probanda cuique rei sufficiant nullo certo modo satis definiri potest.* The law very properly confides this matter to the good sense and integrity of the Jury. It is for the party to procure and produce the best evidence the nature of the case will supply, and it is for the Jury to decide upon its effect. Here the proof was contradictory, and the Jury might have believed, under the charge, that the testimony should have been *positive* and free from contradiction; whereas, all that was necessary was, that their minds should be *satisfied* after weighing all the facts and circumstances of the case.

Upon the whole, therefore, we think it advisable to remand this cause for a new trial. Judgment reversed.