No. 76.—JOHN PRYOR and WILLIAM PENNINGTON, caveators, plaintiffs in error, *vs.* MATTHEW COGGIN and ROBERT McRORY, propounders of the will of John Coggin, deceased, defendants in error.

[1.] It is the duty of the Judge to charge the Jury on all the material points submitted in a case and sustained by testimony, whether he be requested to do so in writing or not.

Caveat to the last will and testament of John Coggin, from the Superior Court of Pike County. Tried before Judge STARKE, October Term, 1854.

In June, 1852, John Coggin made this will, and afterwards died. On the trial, it appeared that he was at the time upwards of seventy years of age. The witnesses to the will testified, that in their opinion he was of sound and disposing mind and memory; or at least, was competent to make a will; and that he did so freely and voluntarily.

It also appeared that the will was written by McRory, his son-in-law, and who was one of the favored legatees under the will. Several other witnesses gave it as their opinion, that testator was competent to make a will, and several testified that they did not consider him competent.

Thomas Trice testified, that the testator exhibited to witness the paper propounded, and also another, and asked witness to read them; and several times, during the reading and before and afterwards, expressed himself dissatisfied with both. He asked witness to write him a will. He frequently asked witness to write him a will; and after the paper propounded was executed, saying he had no will. On one occasion, witness was at testator's house, and Matthew Coggin was present; and testator, several times, asked Matthew for his will, and that he wanted witness to do that writing. Matthew gave the old man an old letter, and when asked by the witness why he did so, he replied that he did it to satisfy the old man. His mind soon became indolent or forgetful.

After the argument, the Counsel for the caveators requested the Court to charge the Jury, that "if the testator was dissatisfied with his will, and was deceived, by having a letter handed to him in place of it, that this, taken in connection with the fact that he never mentioned having a will after it was read to him by Trice, and spoke as though he had no will, amounts, in law, to a revocation of the will." The Court refused so to charge, but charged the Jury, that expressions of dissatisfaction with the will, and·repeated expressions of a desire to make another will, did not amount to a revocation.

Counsel for caveators requested the Court to charge the Jury, "that if the testator was dissatisfied with his will; and that being an old man and nearly blind, he called for his will, and was deceived by a party interested in the will giving him another paper, that this amounted to such a fraud as would authorize the Jury to set aside the will;" and this, also, the Court refused to charge.

The Court below also charged the Jury, that the will was not absolutely void because it was drawn by McRory, whose

wife was a principal legatee therein; but that if it was drawn by McRory, and he was a principal legatee, and the testator's capacity, at the time, was at *all doubtful*, then the Jury might set aside the will on that ground, alone, unless they were satisfied, from the evidence, that the testator knew the contents of the will when he executed it; but that this rule did not apply unless, in their opinion, the testamentary capacity of the testator was doubtful.

The Court also charged the Jury, that undue influence, to vitiate a will, must amount to moral *coercion*—must destroy the free agency of the testator; that incapacity before the will was made, amounted to nothing, if he was of sound and disposing mind at the time ; that it matters not how capricious the will was—how unequally it divided the property of testator among his children; or even if it gave all to a stranger ; yet, if he had testable capacity at the time—understood the contents of the will, and executed it voluntarily, no Court on earth could set it aside or disturb its provisions.

The Jury returned a verdict sustaining the will; and these charges and refusals to charge, are now brought up for review.

McCune, for plaintiff in error.

Gibson, for defendant in error.

*By the Court.*—Starnes, J. delivering the opinion.

[1.] The alleged error upon which we find it our duty chiefly to observe in this case is, the refusal of the Court below to instruct the Jury that if when he asked for his will the testator were deceived by Matthew Coggin's handing to him another paper in lieu thereof, which he destroyed, &c. this amounts to a legal revocation.

It is true, that the request was not made in writing ; and it is also true that the Judge did not, in so many words, refuse so to charge : but he omitted or failed to give such instruction. And the question is raised, whether or not he should have done

this, under the circumstances and in consideration of the facts in evidence.

His Honor, the Judge, certifies that no request was made to him in writing. That intelligent Magistrate cannot mean to intimate thereby, that as a consequence, he was under no obligation to notice the subject, if the request were preferred or the point made by the Counsel verbally, and was material to a right understanding of the case by the Jury. No one knows better than he, that in such case, it is the duty of the Judge to give instruction upon the point, whether it be presented in writing or not, if it be properly submitted, and in time.

Such a point was presented in this case. If it were true that during the last few days of his life, when he was ill in bed, the testator (knowing what he was saying and doing—and whether he did or not was for the Jury to decide) had asked for his will with an intention to destroy it, or have it destroyed, and another paper was given to him as said will, which he did destroy or have destroyed, then this is a point very material indeed to be considered before this will can be admitted to probate. If the point were made verbally or in writing, and there were any facts to sustain it, it was the duty of the Judge to have called attention to it. Let us see if there are such facts.

The record shows, that Matthew Coggin, a principal legatee and one of the executors, states that the testator did call for his will, when ill in bed, and at the time just stated, and that he (Matthew) deceived him by giving to him another paper (an old letter) in its stead. It remains only to be shown that that letter was destroyed by the testator, or at his instance.

We are told by Mr. Trice, that a short time previously the testator had expressed dissatisfaction with both the wills (which had been written for him) that he had been dissatisfied a long time—that he wanted another will—that he did not want either of those before him, and that several times afterwards, (and, as is shown, after the time when Matthew states he deceived him with the letter) he spoke to him about writing a will, and "as though he did not have any will." And finally, on the day when Trice last saw him, he said to Matthew, after the for-

mer had come in, "Mr. Trice has come, and I want that writing done." Presently afterwards, Mr. Trice says he became speechless, and nothing was done.

It is impossible to deny, that such circumstances afford presumptions which a Jury might think sufficient to authorize the conclusion that the testator asked for his will for the purpose of destroying it; and that he afterwards did destroy it, or supposed he had done so.

It is true, as suggested, that on some portion of both the days when Trice had the interviews with him to which we have just referred particularly, the testator was affected by the paralysis with which he suffered, and became speechless; and it is possible that this may go to indicate that his mind was affected, also, at the time: but this was a consideration proper for the Jury. We cannot tell what is its true value. It does not show, however, that the other matter should not have been properly submitted to the Jury.

Add to these reflections, the fact of Matthew Coggin's advantage over the testator, as his nurse, at his bed side; his interest in the result, and the significance of the circumstances upon which we have been dwelling is increased, and these presumptions are strengthened. We should add, also, the reasonable motive of the testator (as stated by himself with regard to Pennington's land, &c.) for desiring to change his will, and the presumptions increase, that he did destroy that old letter, and supposed he had destroyed his will. Finally, it will be observed, that this old letter was not produced by the executors, whose interest it was to produce it; which circumstance adds great weight to the presumption that it was destroyed.

If these conclusions be correct, the Judge should have called attention to this view of the case in his charge; and have told the Jury, in effect, that if Matthew had practiced this deceit upon the old man, and the latter had destroyed the letter, thinking it was the will, such circumstances were equivalent to a destruction or revocation of the will itself; and have left it to the Jury to say whether or not such facts were in proof.

In connection with his failure so to do, the Court perhaps

erred in saying to the Jury that there were two *main* questions in the case. 1. Did the testator know the contents of the will at the time of its execution? 2. Was he of disposing mind and memory? By ignoring the circumstances on which we have been commenting, and by this expression of *two* leading or main considerations, he *excluded* the idea that there was any other in the case. Whereas, if what we have said be right, that which the testator had done equivalent to a destruction of the will, was just as important a question as his knowledge of its contents, or the soundness of his mind at the time of its execution. The Jury may have thus been misled as to the materiality or importance of these circumstances.

Let the judgment be reversed.