*Peok, J.
The testator made a will in due form of law, June 16, 1846, of all his real and personal estate, and upon his decease, in 1853, that will was produced and proved as the statute requires. The will thus made and established, by the mere force of the statute, transferred to the devisees the property and estate thereby bequeathed, unless it was revoked by the testator in his lifetime, in some one of the methods which the law prescribes. It is claimed by the plaintiffs that it was so revoked: 1. By acts of the testator, amounting, in law, to a destruction and consequent revocation of the will; 2. By sale and conveyance by the testator, after its execution, of all the real estate owned by him.
The facts claimed as amounting, in law, to a revocation and dostrnction of the will, are set forth in the bills of exception, and are also embodied in the hypothetical charge given by the court to *170 the jury, at the request of the plaintiffs, and excepted to by the defendants, to wit: The testator being in a room where a fire was burning, called for his will, which was handed to him by John Kent 2d (neither a devisee nor an heir at law), who had had it in his custody, and the testator having felt the three seals upon the envelope inclosing the will, he being blind at the time, handed it back, with the seals unbroken, to John Kent 2d, and directed him to throw it into the fire and destroy it. The said John pretended to throw the will into the fire, and called upon the testator to listen and hear it burn. The .testator listened, smelled paper burning, and then and from thenceforth believed that his will had been destroyed, as he had directed, when in fact said John retained the will, and threw another paper into the fire instead of it, thus inducing the testator to believe that the will had been burned, as he had directed. It was also proved, and the charge, as given, presupposes, that the testator never discovered the fraud thus practiced upon him, but subsequently sold and conveyed his land under the belief that *his will had been thus destroyed, and died in that belief. But we do not perceive that his continued ignorance or his subsequent enlightenment would vary the legal effect of this intended destruction. It either was a revocation at that time or it was not. If the will was then revoked, a subsequent discovery of the fraud would not re-establish it, unless the discovery was followed by acts or conduct on the part of the testator amounting to a republication, and of which there was'not any pretense. See Bohaven v. Walcot, 1 How. (Miss.) 386, and remarks of Gibson, J., in Burns v. Burns, 4 Serg. & Rawle, 567; Lemmer v. Lemmer, 7 H. & J. 388.
The revocation of wills is regulated by the statute, and in regard to express revocations by a testator, section 39 of the act of May 3, 1852 (Swan’s Stat. 1029), “ relating to wills,” etc , in force when the testator died, and which is a literal transcript of section 41 of the act of March 29, 1840, enacts that: “ A will shall bo revoked by the testator tearing, canceling, obliterating, or destroying the same (with the intention of revoking it), by the testator himself, or by some person in his presence, or by his direction; or by some other will or codicil, in writing, executed as prescribed by this act; or by some other writing, signed, attested, and subscribed, in the manner provided by this act for the making of a will; but nothing herein contained shall prevent the revocation implied by law, *171 from subsequent changes in the condition or circumstances of the testator.”
It is undoubtedly true, that the testator intended to destroy the will when he directed it to be cast into the fire, and that he verily believed it had been so destroyed. Does this unexecuted intention, defeated by the deceptive practices of a third person, amount in law to a destruction of the will ?
As will be seen hereafter, the 6th section of the English statute of frauds, etc. (29 Car. 2, c. 3), is, substantially, like our statute upon the subject of express revocations, *and the decisions under it may very properly be used to guide us in the construction to be put upon section 39 of our own statute. Thus, in Bibb ex dem. Mole and wife v. Thomas, 2 W. Bla. 1043, a testor declaring himself dissatisfied with his will, tore it slightly, then “ crumpled it up,” and threw it upon the fire with the intention to burn it, from which it was rescued by a female, without his knowledge, after being slightly singed. An action was brought by the lessee of the heir at law against the devisee, and it was held that these acts, the tearing though slight and the burning though slight, amounted to a revocation under the statute; and the court then proceed to define what will amount to a statutory revocation, in these words: “Revocation is an act of the mind, which must be demonstrated by some outward and visible sign or symbol of revocation. The statute has a specified form of these (burning, tearing, canceling, or obliterating), and if these or any of them are 'performed in the slightest manner, this, joined with the declared intent, will be a good revocation. The present case falls within two of the specific acts described in the statute.” In the more recent case of Reed v. Harris, 6 Ad. & Ellis, 209, 33 E. C. L. 57, the Court of King’s Bench affirms the rule laid down in 2 W. Bla. supra, that a mere intention to revoke will not satisfy the statute; but that there must be some visible sign or symbol of the statutory act upon the paper itself. All the judges concur in holding that the fact of revocation depends upon definite acts which must be evidenced by the paper itself, and not dependent upon parol testimony alone, nor upon the fact that the act of revocation was defeated by the force or fraud of others. That a strong intention to burn is not a burning, and that there must be such an injury as destroys the entirety of the will, so that the instrument no longer exists as it was. That to hold á constructive compliance sufficient would in *172 effect defeat the object and repeal the statute, step by *step. Such is still, we apprehend, the law in England. 1 Pow. on Dev. 595, 596 ; 3 Greenl. Cruise, 96, and notes.
The same rule, with but one exception (Georgia), seems to have been followed by all the states of this Union in which the question has arisen.
Thus, in South Carolina: “It is not enough that the testator intended to revoke his will. He must execute some one of the acts prescribed by the statute to effectuate his intention of revocation.” Means et al. v. Moore et al., 3 McCord, 282; Johnson et al. v. Brailsford et al., 2 Nott & McCord, 272.
So also in North Carolina, in Hize’s Ex’r v. Fischer and wife, where a testator, lying sick in bed, with a fire burning in the room, called for his will, and it being brought to him, he directed his son, who was one of the devisees therein, to throw the will into the fire and burn it, and the son, for the purpose of deceiving the testator, threw another paper into the fire and put the will into his pocket, the testator dying in the belief that the will was so burnt and destroyed, it was held that notwithstanding the fraud thus practiced by .the son, the will was not revoked, because the will not having been burnt in any degree, the attempted revocation rested wholly in parol. 10 Iredell, 139. In the recent case of White v. Caston and wife, 1 Jones (N. C.), 197, the same doctrine was reaffirmed. Nash, J., in delivering the opinion of the court, after an examination of the authorities bearing upon the question, remarked: “ The principle we would extract from the cases cited is, that where the revocation of a will is attempted by burning, there must be a present intent on the part of the testator to revoke, and this intent must appear by some act or symbol appearing upon the script itself, so that it may not rest upon mere parol testimony.”
It has also been' affirmed in Virginia, and in Boyd v. Cook, 3 Leigh, 32, was applied to a case where a testator, who was blind, directed his daughter, the writer of his will and one of the devisees, to destroy his will, which she did not *do, but admitted he believed it was done, the court holding that parol directions to destroy a will, where the testator believes they have been fulfilled, do not satisfy the requisitions of the statute, and that to suffer them to have that effect-, would be to incur the very dangers the statuto meant to avoid.' The same court, in Malone’s Adm’r v. Hobbs and others, 1 Rob. (Va.) 346, reaffirmed the rule in another case, where *173 parol directions had been given for the destruction of a will, which were not complied with, though the testator believed it had been destroyed as requested, and, in the course of their remarks, the court say that “ a particular design to cancel or destroy it (the will), though prevented by accident, fraud, or violence, does not affect the validity of the instrument.”
So it was held in Pennslynania, that an intent to destroy a will by a testator, which destruction was prevented solely by the fraudulent acts and representations of a devisee made to the testator while searching for the will in order to destroy it,-would not amount to a revocation, on the ground that it would bo dangerous and subversive of the statute to hold it a revocation. Clingman v. Mitcheltree, 31 Penn. St. 33.
In Tennessee, a written will of either real or personal estate can not be revoked by mere parol declaration. Allen et al. v. Huff et al., 1 Yerger, 404.
The courts in New York recognize the rule laid down in 2 W. Bla., above cited, as the true rule in regard to express revocations by the acts of a testator. Dau and others v. Brown and others, 4 Cow. 490; 2 Bradf. Sur. 284; 3 Ib. 44.
So in Kentucky. The intention of a testator l!to revoke a will, uncoupled by a revoking act, does not produce a revocation. To substitute the intention to do the act instead of the act itself, without which the statute declares the will shall not be revocable, would be changing the law and not expounding it.” Gaines v. Gaines, 2 A. K. Marsh. 609.
*The ease of Pryor, etc. v. Coggin, etc., 17 Ga. 444, conflicts somewhat with the rule, which prevails, as we have seen, in England and in this country generally, that there must be not only a present intention to revoke, but that such intent must be corroborated by some sign or symbol, appearing upon the script itself, so that the fact of revocation does not rest solely upon parol testimony. It was held in that case, to have been the duty of the court below, there having been evidence tending to support it, to have charged the jury, that if they found that the testator, being an old man and nearly blind, had called upon his tlevisee for his will, and the devisee had deceived him by handing to him an old letter which the testator tore up, believing it to have been his will, that such tearing by the testator, was, in law, a revocation of the will. The court do not make any allusion to the statutes of Georgia, and do *174 not seem to have considered their effect upon the case before them. They cite no authority, nor is any cited by counsel, and the case seems to have been decided upon general principles, and the apparent equities. It is certainly opposed to the uniform current of authority, and must therefore be disregarded.
The statutes of most, if not all, of the states in which these decisions were made, in relation to revocations of wills by express acts of the testator, are, in substance as well as in form, substantially like the 6th section of the English statute of frauds, etc.: “ That no devise in writing of lands, etc., shall be revocable otherwise than by some other will, etc., or by burning, canceling, tearing, or obliterating the same by the testator himself, or in his presence and by his direction and consent; but all devises and bequests of land, etc., shall remain and continue in force until so burnt, etc.” While our statute, heretofore quoted, is in form an enabling rather than a prohibitory enactment, it provides that “ a will shall be revoked by the testator tearing, canceling, etc., the same,” or by some other will or codicil, or other-writing, but does not contain the prohibitory *words of the English statute, against a revocation, by the act of the testator, in any other form. This differeifce in the phraseology does not, in our opinion, render the decisions under the English statute and cognate enactments inapplicable to our statute relating to wills. The previous sections of our law empower persons of full age, and sound mind and memory, to give and devise their property of every description, by a last will and testament, if duly executed, and prescribe the formalities to be observed; and the proviso at the close of section 39, excluding from its operation revocations implied by law from subsequent changes in the condition and circumstances of the testator, would seem to indicate, as clearly as is done by the English statute, that the modes therein specified, are the only ones by which express revocations are to be effected. Our statute, then, authorizes the making of wills, declares their effect when made, and the solemnities to be observed, and the modes in which alone they may be expressly revoked. At common law, parol revocations of written wills were permitted, and the statute of 29 Car. 2, was enacted to prevent the frauds and perjuries which resulted from the practical operation of the common-law rule, and such, doubtless, was the purpose of the legislatures of our own and sister states, in incorpor *175 ating into the acts relating to wills the provisions, substantially, of the English statute as to revocations by the acts of the testator.
It would be to but little purpose to prescribe formalties for the making and authentication of wills, if persons interested in setting the same aside, were permitted to do so by parol proof of an intention to revoke, which was frustrated by the force or fraud of a third porsoD. In thus seeking to prevent alleged frauds upon the testator, through the covinous acts of a devisee or other person, we should be opening the door which the statute, for substantial reasons, has endeavored to close. “Devisavit vel non, seems like revocavit vel non.” Blackstone, J., 3 Wils. *497. And with equal propriety we might hold, that an intended will, which the testator was prevented from executing by the force or fraud of parties interested, should be established as against the heir at law, and yet no one pretends that this could be done. Courts have gone a great way, when we consider the objects and purposes of the statute, in holding that a partial injury to, or destruction of, the will, if apparent upon the paper itself, amounts in law to a revocation of the entire instrument; but they have very properly refrained from holding the instrument revoked, where the evidence of its intended destruction rests solely in parol. In the one case, though all the writing may still be legible, it is nevertheless a different paper from that executed by the testator. Its identity is to a certain extent destroyed, and that partial destruction was the consequence of its attempted revocation. It is true that in such case, parol testimony must be resorted to, to show that the marks upon the paper itself were made in its attempted revocation under the statute, but such testimony is not so entirely subversive of the statute, as evidence of an attempted destruction, wholly uncorroborated by the paper itself.
It is claimed that the act done by the testator, in the case at bar, in handing the will to John Rent 2d, and directing him to burn it, was an act done toward the cancellation of the paper, and, therefore, within the rule in 5 Cruise Dig. 78: “That any act of a testator, by which he shows an intention to cancel his will, though the will benot actually canceled, operates as a revocation.” The context shows that the acts to which the author refers, were the revoking acts prescribed in the statute. He cites no authority, but in the next paragraph, he quotes at length the case in 2 Wm. Bla, supra, which expressly limits the revoking acts to those specified in the *176 statute. And this very case is stated as one which would not amount to a revocation, by Williams, J., in Reed v. Harris, already ^referred to. It amounts to no more than a parol direction to destroy his will.
The question of fraud, so far as it affects the legal validity of the will, has already been sufficiently considered. The statute was designed to prevent frauds and perjuries in mere parol revocations of such instruments. As well might one seek to avoid the statute in regard to contracts respecting real estate, or to paying the debt of another, on the plea that one of the parties would be defrauded if the statutory exemption were enforced. Knox, J., in 31 Penn., above cited, says: “ There is danger in establishing exceptions to a statutory rule, which, like the present, has been found to be essentially necessary for the safe enjoyment and secure transmission of real estate ; for if exceptions onco begin, no one can say when and where they will end.”
On the whole, we are clearly of opinion that the district court erred in instructing the jury as set forth in the second bill of exceptions, that upon the facts assumed in said instructions to be found, the paper writing exhibited to them, was not ,the valid last will and testament of John Kent, deceased.
It is also claimed by the plaintiffs that the sale and conveyance by the testator, after the making of the will and before his death, is a revocation under the statute, so far at least as relates to the real estate. This is true so far as regards a devise of the lands as lands; but the devise to the defendants, the wife dying before the testator, was of all the personal as well as real estate. The sale changed the realty to personalty, and the defendant will take the proceeds of the real estate remaining and undisposed of at the testator’s death, as personalty, a bequest of which has reference to the state and condition of the property at the death of the testator, and not at the making of the will.
It is also claimed by the plaintiffs that, even if the will is not in law revoked by the fraud in preventing its destruction, *still under the proof the defendants may, in equity, be treated as trustees of the property thereby bequeathed for the heirs at law, and that the plaintiffs are entitled to such a decree, under the prayer for general relief.
The trust claimed is one created by operation or implication of law, or a constructive trust, and arises where the holder of the legal *177 estate in property can not also enjoy the beneficial interest therein, without violating some established principle of equity, and the chief instances of such constructive trusts occur where the property has been acquired by fraud, actual or constructive. This rule is general, but not universal. Adams’ Eq. 173, note.
The case made by the plaintiffs is not the ordinary one in which a devise is obtained on a promise, express or implied, that the devisee will hold the land, or a portion of it, in trust for or subject to a change in favor of another, in which it is settled that the trust may be enforced in equity. Jones v. McKee, 3 Penn. St. 496; Hoge v. Hoge, 1 Watts, 163; Gaither v. Gaither, 3 Maryland Ch. 158. Here, the bequest was not made with any such understanding, and the fraudulent prevention of its revocation could not well be tortured into a promise to hold for the heir at law; and to hold the legatee a trustee in such case would seem to nullify the statute prohibiting revocations except in-a specified manner.
The plaintiffs base their right to such relief in this case upon the general principle before stated, that it is inequitable for the legatee to hold the beneficial interest in the property bequeathed, and uj)on a remark of Roberts, in his Treatise on Wills (2 vol. 31), a dictum in 2 A. K. Marsh. 190, and an intimation in 5 Conn. 164. Roberts, on the page referred to, observes, that “ where the intention to revoke is defeated by fraud, it would be consonant to the general maxims of courts of equity, through the medium of a trust, to give effect to the intention, and to treat as perfected, that which would have been perfected *but for the fraud.” He cites no authority for the position, and does not seem to have considered now far the principle, if carried out, would conflict with the policy of the statute, which should be respected and enforced in courts of equity as well as in courts of law. The same remarks are applicable to the cases cited from Kentucky and Connecticut. In neither of them is any such point adjudicated, nor is any authority referred, to by either court for such a position. They are nothing more than loose intimations of a possible remedy in some other form of proceeding, made at the close of the opinion; and in neither case does the intimation appear to have been subsequently acted on. The statute-was designed to prevent the frauds and perjuries arising out of mereparol revocations, and to sanction a recovery in this case, would open the door for the very evils which the statute intended to exclude.
*178 If one who fraudulently prevents the revocation of a will may ibe treated as trustee for the heir at law, it would seem to follow, by ;a parity of reasoning, that where an heir at law, by force or fraud, prevents the execution of a will, he should also be held as a trustee for the beneficiary of the unexecuted will. No lawyer would, I think, hazard the .opinion that the heir at law could, in such ease, “be declared a trustee; and why not, if the general principle adwerted to is applicable to the defendants in this case ? Both alike would be holding the legal title to estates, which, in equity and good conscience, they ought not to retain. If it is said that the heir is in by the statute of descent, so too it may be said, that the devisee claims under a will made before the fraudulent interference. The reason is obvious why the heir could not be so regarded, and the same reason must also exculpate the devisee. The heir at law can not be so treated, because the law, for wise purposes, has prohibited a will, except it be executed under certain formalities ; and the statute has also prohibited the revocation of a will, except under certain formalities. *To permit a recovery in either case, would be to make a will, or, as the case may be, to revoke one in ■& manner which the statute forbids. Is it not obvious that, to hold ■either liable, would, in effect, nullify the statute ? This is probably the reason why the suggestions in Connecticut and Kentucky were never, so far as we can learn, acted upon by the heirs, and also why, in all the other cases of fraudulent intervention referred to, no such intimations were thrown out by the judges while commenting upon the covinous acts. We are therefore, clearly of the ■opinion, that the plaintiffs are not entitled, under the pleadings and the proof, to the equitable relief which they invoke.
The conclusion to which we have arrived relieves us from examining critically and with a view to its competency, the testimony introduced by the plaintiffs and excepted to by the defendants, holding as we do, that all the evidence, objectionable and unobjectionable, does not, in our judgment, make a case of revocation ■either at law or in equity. A part of it, under the rulings here ■made, was clearly inadmissible, while other parts, under certain aspects the case might have assumed, would have been relevant and proper testimony. So far as we are advised, the principal questir ns involved in this ease, have not heretofore been determined in Ohio, ;and the novelty and importance of the questions, and the brief *179 time allotted for their consideration, caused the rulings below and the reservation here for a more full and satisfactory examination.
Yerdict set aside, new trial awarded, and cause remanded for further proceedings.
Brinkerhoee, C. J., and Scott, Sutlife, and G-holson, JJ., concurred.