STATE OF MISSOURI, Respondent, *v.* PATRICK DEVLIN, Appellant.

April 1, 1879.

1. In a murder trial, a declaration of the deceased that the defendant fired the fatal shot is competent, though not a part of the *res gestœ* and not a dying declaration, where it was made in the presence and hearing of the defendant and was not denied by him.

2. Where the defendant identifies as his the signature to an affidavit, it is error to read the affidavit to the jury, for the purpose of contradicting the defendant's testimony, without first giving him an opportunity to explain, by having his attention called to the matter about which it is sought to contradict him.

APPEAL from St. Louis Criminal Court.

*Reversed and remanded.*

F. D. TURNER, for appellant: The declaration of the deceased, not being a part of the *res gestœ* nor made *in articulo mortis*, was incompetent. — *The State* v. *Simeon*, 50 Mo. 370; *The State* v. *McCurran*, 51 Mo. 160; *McMillan* v. *The State*, 13 Mo. 27; *The State* v. *Dominique*, 30 Mo. 585; *The State* v. *Sloan*, 47 Mo. 604; *Ladd* v. *Cozzens*, 35 Mo. 516; *Brownell* v. *Railroad Co*, 47 Mo. 239; *The State* v. *Brown*, 64 Mo. 371. It was error to admit the defendant's affidavit, no foundation having been laid for it. — *The State* v. *Elkins*, 63 Mo. 165; *Prewet* v, *Martin*, 59 Mo. 325; *Kitchen* v. *Railroad Co.*, 59 Mo. 514; *The State* v. *Foye*, 53 Mo. 336; *The State* v. *Starr*, 38 Mo. 275; *Gregory* v. *Cheatham*, 36 Mo. 162; *The People* v. *Reed*, 62 Mo. 129; *The State* v. *Bovine*, 44 Cal. 152.

LEWIS B. BEACH, for respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was indicted for the murder of Lillie Hammer, by shooting her with a pistol. He was found guilty of murder in the second degree, and sentenced to imprisonment in the penitentiary for twelve years.

The testimony tended to show that the defendant and a companion, both being soldiers in the United States regular service, and on a temporary leave of absence, visited a house of prostitution kept by one Minnie Kriedler, and there became involved in a dispute with the deceased and another loose woman, about a small sum of money. There was some conflict in the testimony as to the immediate provocation, one or two witnesses testifying that the deceased was in the act of attacking the accused with a poker, while others swore that she had made no hostile demonstration, other than in words, when the fatal shot was made. The shooting was done between nine and ten o'clock in the evening of October 2, 1876, and the woman died on the 7th of the same month.

Part of the testimony given for the State is thus preserved in the bill of exceptions: " *Q.* Was he (defendant) brought into her (deceased's) presence before her death? *A.* Yes, sir. *Q.* Did she recognize him as the man who shot her? What did she state, if anything? (Objected to as incompetent and irrelevant and immaterial. Objection overruled. To which ruling of the court the defendant's counsel then and there duly excepted.) *A.* She said he was the man that shot her. [The court.] *Q.* That was in his presence? *A.* Yes, sir."

It is objected that this testimony was incompetent, because the declarations of the deceased were not part of the *res gestæ*, nor were they made *in articulo mortis*. The objection might prevail, if there were no other ground of admissibility. The statement was made in the presence of the defendant. It does not appear that he denied its truth.

The apparent acquiescence of the defendant, when he might have contradicted, places the whole on the footing of an admission by the defendant himself. To this end, it is of no consequence by whom the statement was made. That it was not made *in articulo mortis* is of no more consequence in the case of the victim of the fatal shot than

it would be in the case of any indifferent person.   Because the statement cannot be received as a dying declaration, it is not therefore to be rejected on account of the death of the utterer.   It involved a matter of vital concern to the defendant, and was made under circumstances in which any man, if innocent, would be expected to deny the truth of the charge. · It was admissible on the general principle that statements made in the presence of a party sought to be bound by them, and not denied, are competent evidence against him.   *The State* v. *Miller*, 49 Mo. 505 ; *The State* v. *Hamilton*, 55 Mo. 520.

The defendant testified as a witness in his own behalf at the trial, stating, in effect, that he was present at the difficulty which ended in the shooting, and that the fatal shot was fired by another man.   The circuit attorney produced in rebuttal an affidavit for a continuance, which the defendant had made at a former term of the court, wherein he swore that he expected to prove by the testimony of two absent witnesses that at the time of the shooting, and for several hours before and after, he was at Benton Barracks, distant several miles from the scene.   The only foundation laid for the introduction of this paper was in showing the signature to the defendant and asking him if that was his, and in further asking him if he had sworn to the affidavit. He answered affirmatively ; whereupon the affidavit was read in evidence, against the defendant's objections.   This proceeding is assigned for error.

The general rule is universally recognized, that, in order to impeach the credibility· of a witness by proof of contradictory or inconsistent oral statements previously made by him, it is necessary first to direct the witness's attention to the former statements, and give him an opportunity to explain or reconcile the apparent discrepancy.   But in the application of the rule to the case of a previous written or sworn statement, there appears to be some disagreement among the authorities.   In *Clapp* v. *Wilson*, 5 Denio, 285,

a former deposition of the witness was introduced to show his contradictory statements. Said the court: " This being a sworn statement in writing, it was not necessary to call the attention of the witness in the first instance to the statements in it which were intended to be relied on, with a view to explanation. This is only necessary when naked contradictory statements are referred to for the purpose of impairing confidence in the witness." In *The People* v. *McCraney*, 6 Park. Cr. 49, it was held that where the testimony of a witness before the coroner had been reduced to writing, and corrected and read over to and subscribed by her, it could be read in evidence to contradict her testimony on the trial, although her attention had not been called to it during her examination. In *Williams* v. *Chapman*, 7 Ga. 467, the same rule was applied in the case of a sworn deposition of the witness, previously taken in the same cause. Lumpkin, J., upon reviewing a number of authorities, concluded that whatever injustice there might be in recalling loose and inconsistent conversations of the witness without giving him an opportunity to explain, there is none apparent where there has been a previous examination taken under oath, and the witness was under obligation to tell the whole truth.

Adjudications are not wanting, however, in which the privilege of the witness is insisted upon in terms sufficiently comprehensive to include sworn statements and depositions as well as casual conversations. In *Stephens* v. *The People*, 19 N. Y. 549, it was held that the deposition of a witness before the coroner might be read for the purpose of discrediting his testimony upon the trial, so far only as his attention had been called thereto and an opportunity of explaining discrepancies presented to him. In *Samuels* v. *Griffith*, 13 Iowa, 103, it was held that a former deposition by the same witness could not be used for the purpose of impeaching the second, when no foundation was laid in the second deposition by calling the attention of the witness

to the statements made in the first, for the purpose of affording him an opportunity to confirm or explain the same. A number of decisions in other States might be cited to like effect.

In Missouri, the preliminary right of the witness to an opportunity for explanation has frequently been recognized in general terms, without any distinction taken between oral conversations and sworn statements or depositions. In *The State* v. *Elkins*, 63 Mo. 159, the rule was declared that before a statement of the preliminary examination of a witness, taken before a committing officer, can be introduced for the purpose of impeaching his testimony, his attention should be called to it and an opportunity of explanation afforded him. In *The State* v. *Foye*, 53 Mo. 336, the same rule was applied to inconsistent oral statements made by the witness before the trial. So also in *The State* v. *Starr*, 38 Mo. 270. In *Gregory* v. *Cheatham*, 36 Mo. 155, our Supreme Court said : " The authorities all seem clear that the witness cannot be contradicted without first calling his attention to the matter about which he is intended to be contradicted. And in *Conrad* v. *Griffey*, it is said that the rule applies to written as well as verbal statements. Written statements are as susceptible of explanation as verbal ones, and the witness ought to have the same opportunity to explain them." It does not appear from the cases examined that any importance was ever attached to the right of counsel for the party in whose behalf the witness was examined to recall him for the purpose of explanation after the introduction of the discrediting testimony. The rule seems to have been founded on the demands of justice for the witness, rather than for the party.

Upon the whole, the settled doctrine in Missouri appears to be that former statements made by a witness, which were inconsistent with his testimony given at the trial, cannot be introduced by way of attacking his credibility, until his attention has first been called to the specific statements

intended to be used, and an opportunity has been afforded him to affirm, deny, or explain them; and that the rule applies as well to written or sworn statements, as to oral conversations. In the present case, no such foundation was laid. The defendant witness was not even apprised of the object for which he was asked to identify his signature to the affidavit. After the close of the testimony for the defence, the affidavit was produced and read to the jury, against the defendant's objections. The error in this proceeding is made more material by the fact that the witness whose rights were violated was the defendant himself on trial. It is impossible to say that the conclusion ultimately reached by the jury had received no impress from the matter complained of. All the judges concurring, the judgment is reversed and the cause remanded.