## FORD vs. KENNEDY.

1. Where suit was brought against defendants as partners, and one having died, it proceeded against the other as surviving partner, the plaintiff was not competent to testify concerning transactions between himself and the deceased in the absence of the survivor. If the interrogatories of the decedent were in court, the attention of the presiding judge should have been called to the fact.

2. The mere belief of a witness as to facts not in his knowledge is inadmissible.

3. On an issue of partnership or no partnership, the sayings of one who admitted himself to be a partner, were not admissible to prove that another, who denied being a partner, was in fact such.

4. Admissions of one who denies being a partner are admissible to prove him such.

5. The mere general understanding of a witness, not based on facts, is inadmissible.

6. An admission of evidence, which, if error at all, was so slight as to be harmless, is not ground for a new trial.

7. Where suit was brought on an open account, to which the statute of limitations was pleaded, and certain items were relied on to take the whole account from under the bar, they must not only be pleaded but also proved.

8. It was not error for the court to refuse to charge that admissions, when clearly proved, became evidence of a high character. The jury should determine the weight to be given to evidence. "All admissions should be scanned with care."

9. The verdict is not contrary to law or evidence.

Witness. Evidence. Partnership. Charge of Court. Statute of limitations. Verdict. Before Judge McCutchen. Catoosa Superior Court. September Term, 1879.

To the report contained in the decision it is only necessary to add that the following were among the grounds of the motion for new trial:

(1.) Because the verdict is contrary to law, contrary to evidence, strongly and decidedly against the weight of the evidence, and against the principles of equity and justice.

(2.) Because the court ruled that plaintiff was not competent to testify as to transactions and conversations between him and John D. Gray, not in presence of Kennedy, said

Gray being admitted to be dead. The interrogatories of John D. Gray were in court, and taken at the instance of himself.

Note by the judge: "The court's attention was in no way, during the trial, called to the fact that John D. Gray's testimony had been taken, and was in court, and no point was made to the court about it in any way."

(3.) Because the court erred in admitting, over plaintiff's objections, the ninth interrogatory and the answer thereto of Allen Kennedy, as follows: Interrogatory ninth: "State whether or not you frequently spoke of John D. Gray to others as your old partner, and whether or not John D. Gray frequently spoke of and introduced you to others as his old partner." Answer to ninth interrogatory: "I have; he did."

(4.) Because the court, on defendant's objection, ruled out the following of the answers of Homer Blackman: "He has heard said Gray say repeatedly that all of them (meaning Gray, Kennedy & Chamberlin) were partners in said contract, and jointly interested therein." * * * * "He has heard said Gray say several times that they were partners in said contract, (that is, said Gray, said Kennedy and said Chamberlin)."

(5.) Because the court ruled out that portion of the answer of B. E. Wells to the fifth direct interrogatory, as follows: "The whole transaction was for J. D. Gray & Co., as I then believed, and now believe, from what Gray told me, and from my knowledge of the business of J. D. Gray & Co. upon the railroad of which I had charge."

(6.) Because the court erred in not permitting all of B. E. Well's answer to fifth direct interrogatory to be read without striking out any part of it, to-wit: "At the time J. D. Gray made me the offer as stated in answer to fourth interrogatory, he stated that himself, Allen Kennedy and said Mr. Chamberlin, whose given name I don't remember, composed the firm of J. D. Gray & Co. This was before Gray & Co. borrowed the money as aforesaid. It was

Ford *vs.* Kennedy.

when the work was first commenced. (Mr. Chamberlin, also told me the same thing at that time, and afterwards, I think.) About the time J. D. Gray & Co. commenced work on their contract near Troy, Ala., Allen Kennedy and, myself traveled in a stage coach together from Linwood to Troy, Alabama. On that trip we had a conversation about Gray & Co.'s contract. In that conversation, as I now remember it, Kennedy told me he was a partner in the contract with Gray. Kennedy was present upon the work about the time it was commenced—remained about one month. (It was generally understood—I understood it—that Kennedy was Gray's partner in this grading contract, which is the contract I have alluded to in my previous answers as the contract of J. D. Gray & Co.)." The court ruled out the portions enclosed in brackets, allowing the balance to be read.

(7.) Because the court erred in admitting, over plaintiff's objections, the following portion of Charles Chamberlin's answers to interrogatories : "In the limited interviews I had with Mr. Ford, he always spoke as a partner interested. * *, * * In all the conversations I had with Ford, he always spoke of Gray as being the principal partner."

(8.) Because the court, after having charged that "all admissions should be scanned with care," erred in refusing to give in addition this request of plaintiff's counsel, that "while admissions should be scanned with care, yet, when clearly proved, they become evidence of a high character."

(9.) Because, after charging that an entire account is not barred until four years from the date of the last item, added "which is proved. This doctrine applies only when there are mutual accounts and dealings between the parties."

D. A. WALKER; J. E. SHUMATE, for plaintiff in error.

R. J. McCAMY, for defendant.

V 64—34

JACKSON, Justice.

Ford brought suit on an account against Gray, Kennedy & Chamberlin, as co-partners engaged in work on the Mobile and Girard Railroad, in the state of Alabama, under the alleged name and style of Gray & Co. Chamberlin was not served, Gray died pending the suit, and the contest narrowed to a single-handed fight between Ford and Kennedy as the only surviving partner sued and served. The jury found for Kennedy; Ford moved for a new trial, it was refused, and he excepted.

. The issues are, was Kennedy a partner in the company of Gray & Co.? If not, did he virtually become one as to third persons by holding himself out as a partner, so that credit was given Gray thereby on account of Kennedy having been considered a partner? and especially, did he so act as to authorize Ford to consider him responsible as a partner? and if Kennedy was a partner or held himself out as such, was not Ford also a partner of the same firm and, therefore, not entitled to recover from the firm, the debts to third persons not having been paid? and, if all these issues be decided for Ford and against Kennedy, is not the account barred by the statute of limitations?

On the trial of these issues Ford alleges in his motion that the court erred in admitting and rejecting evidence, in charging the jury and, in overruling the motion and sustaining the verdict, though against the evidence and the law.

1. First, as to the ruling of the court on the testimony. Gray being dead, was Ford competent as a witness under the Code, section 3854? Gray had been a party actually served. The suit went on against the surviving partner, and a judgment would bind the partnership assets in which Gray's estate was interested. To the transactions between Gray, the deceased partner, and Ford, in the absence of the other partner, Ford was therefore incompetent, Gray being dead and his mouth shut. Mark, the attention of the

presiding judge was not called to the fact that Gray's inter-rogatories had been taken and that the answers were in court.   Under the facts disclosed in this record, the presiding judge did not err in restricting the testimony of Ford as he did, that is, in permitting him to testify (about what passed between him and Gray touching the partnership) only to conversations in Kennedy's presence.   *McGhee vs. Jones et al.*, 41 *Ga.*, 123 ; 42 *Ga.*, 120 ; 44 *Ga.*, 46.   And all sayings of Gray, in the absence of Kennedy, were properly ruled out.

2. The mere belief of Wells was also properly ruled out.

3. The sayings of Chamberlin about Kennedy being a partner, were inadmissible in Kennedy's absence.   The issue was whether Kennedy was or was not a partner, and that fact being in dispute, what others who acknowledged themselves to be partners merely said about it, is hearsay.

4. What Ford said about his, Ford's, being a partner was admissible, just as what Kennedy said about his, Kennedy's, being a partner, was admissible ; but what others said in their absence was hearsay.

5. The mere general understanding of a witness, not based on facts, is inadmissible.

6. Testimony was in that Gray had introduced Kennedy as his partner, and this was denied by Kennedy, who said that on the occasion referred to he was introduced as his old partner—they having been partners in a former venture.   On this state of facts, the court allowed Kennedy to testify further that it was the habit of Gray and himself to introduce each other as "my *old* partner," and this is assigned as erroneous.   It threw light, we think, on a point in dispute.   Besides, Kennedy had positively sworn that he was not so introduced, and if the jury believed that, the other did not hurt—at all events, if error, it is so slight as to be considered harmless.   These views will cover the exceptions as to testimony.

7. In respect to exceptions to the charge, we think that the court was right to tell the jury that the items of an ac-

count relied upon to take the whole account without the statute of limitations, must be *proven* as well as charged on paper—otherwise one might keep an account without the statute forever, by the mere addition of items without proof of their reality.

8. Nor do we think that it was the duty of the court to tell the jury that admissions, when clearly proven, became evidence of a high character. It was for the jury to weigh the testimony, and to give it that character to which its weight entitled it. Our statute declares, in respect to the weight of such testimony, that "all admissions should be scanned with care, and confessions of guilt should be received with great caution"—Code, §3792. The court charged the first clause of that section in respect to admissions, and there left it. We see no impropriety in his having done so.

The exception to the charge in respect to the statute of limitations, was not insisted on here.

9. So we are brought to the ground that the verdict is contrary to the law and the evidence, for the grounds that it is against the charge are merged in the higher ground that it is against law.

While several witnesses testify to facts and circumstances and admissions going to show that Kennedy was a partner of Gray, yet Kennedy is sustained in his own sworn testimony by the contract between Gray and Blackman, which was in writing, and could not lie. That sets him out repeatedly as a mere surety, and supports his version of his relation to the contract. That bound him to see to it that Gray performed his contract with the railroad company, but not to pay this debt which Gray owed Ford for supplies. So in regard to his holding himself out as a partner to Ford the testimony is conflicting, as well as in respect to the plea of defendant that Ford was himself a partner of Gray, and to the statute of limitations.

We think that the jury had evidence enough to sustain the finding as legal, and no material error of law being made

by the presiding judge, and the verdict being approved by him, it is not contrary to law, and the judgment overruling the motion for a new trial is affirmed.

Judgment affirmed.