SMITH *vs.* PAGE, administrator, *et al.*

1. There was evidence sufficient to authorize the verdict, and the judge did not abuse his discretion in refusing to disturb it.
2. The testimony of a witness, given on another occasion, like his sayings made elsewhere, may be resorted to for the purpose of impeaching him, provided a proper foundation is first laid for its admission. When the contradictory statements are made in affidavits, or in answer to written interrogatories, in the same case, there is no need of laying the foundation by calling the witness's attention to them; but this applies only to impeachment, and not to the correction of mistakes of a witness.
 (*a.*) If testimony was properly rejected, the ruling of the court will be sustained, although he may have given an insufficient, or even a wrong reason therefor.
3. The weight to be given to the evidence of witnesses alleged to have been impeached, is not one of the material questions in the case, without allusion to which the charge would be necessarily defective. It is only incidental or collateral to such material point, and, therefore, a failure to charge concerning it will not require a new trial, where the attention of the court has not been called to it, and no request to charge concerning it has been made.
4. A charge that admissions should be scanned with care by the jury, but that when clearly made out and proved, they were high and strong proof against the party making them, though somewhat inaptly expressed, was substantially correct, and will not require a new trial.
5. There was no error in admitting testimony as to what disposition the defendant's intestate said he had made of cotton while it was in his possession and under his control, such statements being made to a witness, who was endeavoring to obtain it from him in payment of a debt against him. This was admissible both as a disclaimer of title and to sustain witnesses sought to be impeached.

April 8, 1884

Verdict. Witness. Evidence. Charge of Court. Admissions. Before Judge CARSWELL. Johnson Superior Court. September Term, 1883.

I. L. Smith brought complaint for land against A. A. Page, administrator of W. C. Chester, and Mrs. W. C. Chester. He relied on a deed from W. C. Chester, the decedent. Defendants pleaded that this deed was given merely

as a security for a debt, and a bond to reconvey on payment made; that the debt had been paid in the lifetime of the decedent; that if anything remained due at his death, it was only $50.00, which had since been paid by Mrs. Chester. The equitable plea prayed that Smith be required to make a deed to the administrator of Chester, and offered to pay any amount which should be found still to be due on the debt.

The evidence was conflicting on the subject of payment, and need not be detailed here.

The jury found the following verdict:

"We, the jury, find the plaintiff $85.05, principal and interest due on the land in dispute, to be paid November 1st, 1883. If not paid by that time, the plaintiff shall recover possession of said land. We find our verdict on plea of settlement made by plaintiff with defendant since death of W. C. Chester. So say we all."

Plaintiff moved for a new trial, on the following among other grounds:

(1.) Because the verdict is contrary to law and evidence.

(2.) Because the court erred in this: After charging "that admissions should be scanned with care by the jury," he added, "but admissions, when clearly proved and made out, are high and strong proof against the party making them."

(3.) Because the court refused to allow counsel for plaintiff to introduce in evidence the following parts of the testimony of Mrs. W. C. Chester, embraced in a brief of the evidence agreed upon by counsel and approved by the court, as a true and correct brief of her evidence in a former trial of this case, to-wit: "In 1873, my husband delivered Smith a horse for $120 on this land debt. This was shortly after the land trade was made;" and this, to-wit: "I don't know whether the horse for $120 was paid on the note first given for the land by my husband, with my father, Allen A. Page, as security, or on the note for $500, given by my husband alone for the land, at the time when he gave Smith this deed to secure its payment;"—

this evidence being offered by counsel for plaintiff to show that the witness was mistaken when she swore, on this trial, that said horse was delivered in the spring of 1874, as a payment upon the last note of $500, given by Chester to plaintiff for this land.

(4.) Because the court rejected from evidence, the following parts of the testimony of Allen A. Page, embraced in the brief of the testimony agreed upon and approved as his evidence, upon the first trial of this case, to-wit: 'In 1873, or first of 1874, directly after the note was given, Chester paid a black mare, valued at $120, I thought $125, as a credit on the note I and Chester gave;"—this evidence being offered to impeach said Allen A. Page, and to show that he was mistaken when he swore, on the present trial of said case, that said mare was delivered to Smith in the spring of 1874, as a payment upon the $500 note, given by Chester to Smith for the land in dispute.

(5.) Because the court failed to charge the jury what weight they should give to the testimony of Allen A. Page, counsel for plaintiff having impeached said Page by two witnesses; and the court entirely omitted to give in charge to the jury the law upon the subject of impeaching testimony.

(6.) Because the court admitted in evidence the following answer of James R. Pritchard to the third direct interrogatory propounded to him, to-wit: "In the year 1875, Chester made an account with Mayo & Pritchard to the amount of $120, and in the fall, he came up and paid us $5.00, telling us he had to pay the balance of his money to Smith; that he owed Smith on land. In the year 1876, I saw Chester with three bales of cotton, and I offered him his account for one of them. He told me I could not get it; that it was Smith's (or words to that effect.) I don't know whether Smith got the cotton or not."—Objected to on the ground that these declarations of Chester were in his own favor, and that the evidence did not show that the cotton was delivered to Smith. [It

was claimed by the defendants that Chester paid part of the plaintiff's claim in cotton, and other witnesses testified to the delivery of cotton by him to plaintiff in 1876.]

The motion was overruled, and plaintiff excepted.

JOHN M. STUBBS; HINES & ROGERS, for plaintiff in error.

A. F. DALEY; CAIN & POLHILL, for defendants.

HALL, Justice.

This was an action in the statutory form to recover the premises in dispute, to which the defendant pleaded the general issue, and further that the deed was executed and delivered by his intestate to secure a debt due from him to the plaintiff; that, upon the payment of the same, the plaintiff obligated himself to reconvey to said intestate; that the said intestate, in his lifetime, had performed his part of the contract by making full payment, but if there was any mistake in this, and any balance remained due, defendant was ready and willing and offered to pay the same, when ascertained; he prayed that an account might be taken of the dealings between the parties, and a judgment rendered awarding to plaintiff what might appear to be due him, and upon his receipt of the same, if anything was found due, that the title to the premises might be adjudged to be in the estate of the intestate. After much testimony of a very conflicting character, the jury found eighty-five dollars due the plaintiff on account of this transaction. Construed by the pleadings in the case, the legal intendment of this verdict was. that the plaintiff should recover this amount, and that, upon the payment of the same, the title to the land should vest in the estate represented by defendant. The plaintiff was dissatisfied with this finding, and moved a new trial upon various grounds, which was overruled by the court.

1. We cannot say that the verdict was contrary to law and evidence, or that it was decidedly and strongly against

the weight of evidence. We think there was evidence to authorize it, and that the judge did not abuse his discretion in refusing to disturb it. It is his province alone to exercise this discretion. We are invested with no such power, except in clear cases of abuse. It is high time that the profession should understand this rule, and should act upon it. We cannot, and will not, usurp functions that belong to juries and to the judges of the lower courts.

2. There were several special grounds upon which it is insisted the new trial should have been ordered. The first we shall notice is that embraced in the sixth and seventh grounds of the motion for a new trial, and amounts to this, that the court committed error in refusing to admit in evidence the testimony of the defendant, and of Mrs. Chester, had on a former trial of this case, and embodied in a brief of evidence agreed to by counsel and approved by the court, which was offered, in the case of the last witness, to show that she was mistaken in her testimony given on the present trial ; and in the first, to impeach and likewise to show that defendant was "mistaken" in his testimony given on the present hearing.

We are not aware that mistakes of witnesses can be corrected in this manner. The testimony of a witness given on another occasion, like his sayings made elsewhere, may be resorted to for the purpose of impeaching him, provided a proper foundation is first laid for its admission. This proposition will not be seriously questioned. In a case where the contradictory statements are made in affidavits, or in answers to written interrogatories in the same cause, there is no need of laying the foundation by calling the witness's attention to them. 7 *Ga.*, 467, 470, 471 ; 14 *Id.*, 186, (10 head-note). In the last case cited, this court said in express terms (p. 195): "We adhere to the rule that, in order to impeach a witness, by proof of contradictory statements, the foundation must first be laid by asking him whether or not he has made the declaration intended to be proved. But this does not apply where the

evidence to impeach the witness is his sworn depositions, previously taken in the same cause." In the first of these cases, that from the 7 *Ga.*, 467, there is not only an exhaustive discussion of this requirement by the learned judge pronouncing the opinion, but the use of this testimony is restricted to the sole purpose of impeachment. From this record, it does not affirmatively appear that the attention of either of these witnesses was called to the language used by them on the former trial, or how much of this was repeated to them, or whether any part of it was read from the manuscript said to contain it. Nor was there an avowal at the time of the purpose for which it was sought to be introduced, which has always been held essential, in order that the court may judge of its materiality. *Ib.* It may be true, as contended, that the judge gave an insufficient or even a wrong reason for rejecting the evidence. With this we have no concern; all that we can look to is the judgment rendered. If this is proper, it is immaterial by what process of reasoning it was reached.

3. The failure of the judge to charge as to the weight to be given to the evidence of witnesses alleged to have been impeached, when his attention has not been called to it, and no request has been made to charge in relation thereto, is not error. This is not one of the material questions in the case, without allusion to which his charge would be necessarily defective. It is only incidental or collateral to such material points, and does not fall within the cases cited from 17 *Ga.*, 444, and 67 *Id.*, 151; nor *Richardson vs. The State*, 70 *Ga.*, 825.

4. A charge that admissions should be scanned with care by the jury, but that, when clearly made out and proved, they were high and strong proof against the party making them, though somewhat inaptly expressed, is substantially correct. Code, §3792. When "deliberately made and precisely identified, they are usually received as satisfactory." 2 *Ga.*, 30. "Admissions by parties are not to be regarded as an inferior kind of evidence; on the contrary, when

satisfactorily proved, they constitute a ground of belief on which the mind reposes with strong confidence. But the proof of the fact that they were made, and of the terms in which they were made, ought to be cautiously scanned." 29 *Ga.*, 443, 450. In this last case, this court reviewed a charge to the effect that this "was an inferior kind of evidence," with the result above announced. Stephens, J., who delivered this opinion, speaking for himself, did not perceive "what reason there was for pronouncing a sentence of degradation upon this kind of evidence." In 64 *Ga.*, 537, 542, this court did not think it the duty of the judge to tell the jury that admissions, when clearly proved, became evidence of a high character; it was for them to weigh the testimony, and give it that character to which its weight entitled it. Nor did it think there was any impropriety in charging that admissions should be scanned with care, and there leaving it. Yet they did not go so far as to hold, that if the charge requested in that case had been given, it would have been error, for which the judgment should be reversed. The case in 60 *Ga.*, 185, does not cover the point in question. There the jury were restricted by the charge to certain inferences to be drawn from the admissions in evidence, which was properly held to be an unauthorized interference with their peculiar province.

5. There was no error in admitting testimony as to what disposition the defendant's intestate said he had made of certain cotton, while it was in his possession and under his control, to the witness, who was endeavoring to obtain it from him in payment of a debt which he held against him. This testimony was admissible, for what it was worth, as a disclaimer of title on his part to the property, and an acknowledgment of plaintiff's right to have it. Code, §3774. It was one link in the chain of the evidence, and if there was a failure to supply the others by showing that the plaintiff got the property, then it went for nought; but this was a matter for the jury, in connection with the

other evidence in the case, which, to say the least, tended to that conclusion. Besides, it was admissible to corroborate the testimony of other witnesses, whose character had been assailed, and whose veracity the plaintiff endeavored to impeach.

Judgment affirmed.